**Received Electronically**
**October 15, 2024**
**United States Court of Appeals**
**For the First Circuit**

No. 24-_____

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

NATALIA ORTIZ,

on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

SABA UNIVERSITY SCHOOL OF MEDICINE, and R3 EDUCATION, INC.,

Defendants-Petitioners.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(The Honorable William G. Young, Case No. 1:23-cv-12002-WGY)

_____

**Petition to Appeal Class Certification**
**Pursuant to Federal Rule of Civil Procedure 23(f)**

_____

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Saba University School of Medicine is a medical school located on the island of Saba in the Caribbean and accredited by Nederlands-Vlaamse Accreditatieorganisatie ("NVAO"). All of the membership interests in Saba University School of Medicine are owned by R3 Education, Inc., a Delaware corporation with its principal place of business in Devens, Massachusetts. All of the ownership interest in R3 Education, Inc. is owned by Global University Systems Holding BV, a privately held corporation with its principal place of business in London, United Kingdom.

## <u>TABLE OF CONTENTS</u>

BACKGROUND ...................................................................................................1

QUESTIONS PRESENTED..................................................................................5

REASONS FOR GRANTING THE PETITION....................................................6

     I.     Standard of Review ..............................................................................6

     II.    The District Court Abused its Discretion by Failing to Conduct
            a Rigorous Analysis of the Rule 23 Factors........................................7

           A.     Plaintiff did not establish numerosity because she made
                   no evidentiary showing that any other person was
                   affected as Plaintiff allegedly was. .............................................9

           B.     Plaintiff did not establish commonality or typicality
                   because she failed demonstrate that Massachusetts law
                   should apply to every class member. ........................................10

           C.     Plaintiff did not establish predominance because she did
                     not show that Chapter 93A could apply to each class
                   member and over one third of the class will be subject to
                   an individualized "discovery rule" inquiry.............................13

           D.     Plaintiff did not establish predominance because she
                     failed to show that the advertisements caused the claimed
                   damages and failed to present an appropriate damages
                   model capable of application on a classwide basis.................15

     III.   The District Court Abused its Discretion by Allowing Plaintiff
            to Submit Entirely New Arguments and Evidence in Her Reply
            Without Giving Defendants an Opportunity to Respond...................20

CONCLUSION ...................................................................................................21


ATTACHMENTS
     Class Certification Court Order (Dkt. 102)
     Class Certification Hearing Transcript (Dkt. 98)

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aronstein v. Mass. Mut. Life Ins. Co.*,
  15 F.4th 527 (1st Cir. 2021)..................................................................7

*Camey v. Force Factor, LLC*,
  No. 14-14717-RWZ, 2016 WL 10998440 (D. Mass. 2016) ..............................11

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
  65 F.Supp.3d 283 (D. Mass. 2014)....................................................11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)...........................................................13, 15, 19

*In re Credit Suisse–AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008)..........................................................12

*Henry v. Bozzuto Mgt. Co.*,
  159 N.E.3d 701 (Mass. App. Ct. 2020); ...........................................10

*Hershenow v. Enterprise Rent–A–Car Co. of Bos., Inc.*,
  840 N.E.2d 526 (Mass. 2006)........................................................16, 17

*In re Celexa & Lexapro Mktg. & Sales Prac. Litig.*,
  291 F.R.D. 13 (D. Mass. 2013).........................................................12

*Levy v. Gutierrez*,
  448 F.Supp.3d 46 (D.N.H. 2019)......................................................15

*Makuc v. American Honda Motor Co.*,
  835 F.2d (1st Cir. 1987)................................................................10

*In re Nexium Antitrust Litig.*,
  297 F.R.D. 168 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (2015)..................................8

*Nightingale v. Nat'l Grid USA Serv. Co., Inc*,
  107 F.4th 1 (1st Cir. 2024).................................................6, 13, 15, 18

*Noonan v. Wonderland Greyhound Park Realty LLC*,
   723 F.Supp.2d 298 (D. Mass. 2010) .................................................................21

*Omori v. Brandeis Univ.*,
   673 F.Supp.3d 21 (D. Mass. 2023) ..................................................................19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005) .......................................................................11

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) (Young, J.) ....................................................11

*Romulus v. CVS Pharmacy, Inc.*,
   No. 17-8024, 2017 WL 7310384 (1st Cir. Dec. 21, 2017) ..................................7

*S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
   241 F.R.D. 85 (D. Mass. 2007) .......................................................................11

*Shaulis v. Nordstrom, Inc.*,
   865 F.3d 1 (1st Cir. 2017) ................................................................16, 17, 18

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) ..............................................................................8

*United States v. Tosi*,
   897 F.3d 12 (1st Cir. 2018) ............................................................................21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................12

*Walsh v. TelTech Sys., Inc.*,
   821 F.3d 155 (1st Cir. 2016) ..........................................................................15

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ...........................................................6, 7, 14, 15

## STATUTES AND RULES

Fed. R. App. P. 5 ..............................................................................................1

Fed. R. App. P. 5(c) ..........................................................................................1

Fed. R. App. P. 32(a) ........................................................................................1

Fed. R. Civ. P. 23 ...................................................................7, 8, 19, 21

Fed. R. Civ. P. 23(a) ........................................................................8, 9

Fed. R. Civ. P. 23(b) ......................................................8, 13, 14, 15, 19

Fed. R. Civ. P. 23(f) ..................................................................1, 5, 21

Fed. R. Civ. P. 32(f) .............................................................................1

Local Rule 7.1(b) ...............................................................................20

Local Rule 7.1(b)(1) ..........................................................................20

Mass. Gen. Laws ch. 93A ...........................................6, 11, 13, 15, 17

Mass. Gen. Laws ch. 93A, § 2 ...........................................2, 5, 15

Mass. Gen. Laws ch. 93A, § 9 .............................................................15

**OTHER AUTHORITIES**

Restatement (Second) Conflicts § 148....................................................11

Pursuant to Federal Rule of Civil Procedure 23(f) and Federal Rule of Appellate Procedure 5, Defendants-Petitioners Saba University School of Medicine and R3 Education, Inc. (collectively, "Saba") request permission to appeal the district court's grant of Plaintiff Natalia Ortiz's Motion for Class Certification ("Motion") made on October 1, 2024. Dkt. 102. Saba seeks reversal of the district court's class certification line order, or, in the alternative, remand for reconsideration based on a more complete record.

## BACKGROUND

This case involves advertisements and marketing messages Saba, a Caribbean medical university, made to encourage enrollment of prospective medical students. These messages mention the high rate at which Saba's students pass "Step 1" of the United States Medical Licensing Exam. Step 1 is a standardized exam students must pass to obtain clinical appointments at hospitals and other institutions in the United States. The rates Saba advertises are the number of students who passed Step 1 on their first attempt (as reported to Saba by the Education Commission for Foreign Medical Graduates) divided by the number of students making that first attempt, which is the method required by the U.S. Department of Education.

Plaintiff is a former student who failed to pass her Basic Sciences courses resulting in her academic dismissal. Dkt. 16, at 1-2; Dkt. 1, at ¶ 96. Plaintiff claims

she was induced to enroll at Saba by Saba's advertisements of its students' first-time Step 1 pass rates. Dkt. 1, at ¶ 3. Plaintiff alleges that these advertisements do not reference any "graduation rate" or "attrition rate" of its students, and that Saba's omission of the fact that some students leave Saba before ever attempting the Step 1 exam renders the messages deceptive and violative of Chapter 93A, § 2. Plaintiff's theory of the case appears to be that by failing to disclose its attrition rate, Saba misleads unqualified students about their chances of success in medical school. Plaintiff, however, testified in her deposition that the USMLE Step 1 pass rate was "specifically" not important to her and that the most important factor in her decision was Saba's rolling admissions policy;[1] in fact, Plaintiff applied to no other medical schools. Dkt. 71-1, at 14.[2] Plaintiff identified no "advertisements" that she actually saw prior to enrolling at Saba, other than emails from Saba admissions personnel sent only to her. Dkt. 69, at 11. Plaintiff also conceded that, had she passed all her classes, she "obviously wouldn't say [Saba's] basic sciences course work was worthless." *Id.* at 55:4-8.

Saba's advertisements are demonstrably accurate. Its published first-time Step 1 pass rate, by definition, includes only those students who advanced far

---

[1] Rolling admissions enable students to commence their studies at one of three times throughout the year as opposed to waiting an entire year. Dkt. No. 69, at 9.

[2] Deposition citations to pages as shown in the docket.

enough in the program to take the exam. Plaintiff has identified no other Caribbean medical schools who make such disclosures in advertisements concerning their Step 1 pass rates and Plaintiff identified no laws, regulations, or industry standards requiring such disclosures. On September 17, 2024, the district court held argument on Plaintiff's Motion for Class Certification. Dkt. 102.[3] During argument, the court stated that it would certify a class of all students who enrolled at Saba from September 2017 to October 1, 2024 who: (i) are no longer enrolled at Saba; and (ii) did not sit for the USMLE Step 1 exam. Dkt. 98, at 13. The district court, *sua sponte,* excluded from the class anyone who: (i) transferred Saba credit(s) to another school; or (ii) failed to pass a majority of the classes they took or enrolled in at Saba. *Id.* The district court noted that the decision whether to certify a class in this case is a "very close question" and "particularly difficult," and indicated it might change its mind while drafting its opinion. *Id*. When Saba's counsel mentioned the possibility of appealing, the court purported to deny it, and suggested to defense counsel that "in the real world, you people ought to be talking about resolving this case" and not appealing. *Id.* at 14. On October 1, 2024, the court entered a line order granting certification, based on the oral argument. Dkt.

---

[3] Immediately before the hearing, the district court denied Saba's Motion to Strike the declaration of Plaintiff's expert witness and arguments raised for the first time in Plaintiff's Reply with no hearing or explanation. Dkt. 95.

102. As of this filing, no opinion has issued from the district court explaining its reasoning.[4]

The district court abused its discretion in certifying the class in several respects. First, the district court certified a nationwide class when Plaintiff made no showing that Massachusetts's consumer protection statute should apply to class members with no ties to Massachusetts, herself included. The purported class includes citizens of 40 states and 13 foreign nations. Dkt. 53-41. Massachusetts choice-of-law principles (1) require a court to assess the state with the most significant relationship to the occurrence and the parties, and (2) deem that the state to be the one in which the injured party took action and was injured. The district court did not explain its departure from the prevailing case law at the hearing or in its line order, nor did Plaintiff provide evidence that would justify such a departure. Moreover, limitations issues would require an individualized determination of whether the "discovery rule" applies to many of the class members.

Second, the district court erred as a matter of law in accepting Plaintiff's "purchase as injury" theory of damages. Plaintiff claims that her medical education was worthless because she was academically dismissed before sitting for the Step 1

---

[4] If the district court issues its opinion while this Petition remains pending, Saba intends to request leave to supplement this Petition to address the opinion.

Exam. This damages theory ignores the fact that Plaintiff received two years of medical instruction and coursework. This is a "purchase as injury" theory, an approach which has been rejected by Massachusetts state courts and this Court, both of which require a causal connection or proximate cause between a deceptive act and a loss, and which prohibit recovery for injuries based on a claimant's subjective belief as to the value of what they received.

Finally, most of the arguments and supporting evidence the district court apparently accepted from Plaintiff were submitted for the first time in Plaintiff's Reply in Support of Class Certification ("Reply"), and the district court prejudicially denied Saba an opportunity to file a rebuttal to the new evidence and arguments without any explanation.

The district court's bare line order leaves Saba in the potential position of having to repay all tuition to all unsuccessful students and even students that voluntarily withdrew from the university, despite those students receiving the instruction and course materials they were promised and will improperly require Saba to financially guaranty its students' outcomes. The district court's certification order should be reversed or vacated under Rule 23(f).

## QUESTIONS PRESENTED

1.    Whether the district court abused its discretion by certifying a worldwide class under Mass. Gen. Laws ch. 93A, § 2 when Plaintiff:

a.  did not establish numerosity because she made no evidentiary showing that any other person was affected as Plaintiff allegedly was;

b.  did not establish commonality or typicality because she failed to demonstrate that Massachusetts law should apply to every class member;

c.  did not establish predominance because she did not show that Chapter 93A could apply to each class member and over one third of the class will be subject to an individualized "discovery rule" inquiry; and

d.  did not establish predominance because she failed to show that the advertisements caused the claimed damages and failed to present a damages model capable of classwide application.

2.  Whether the district court abused its discretion by allowing Plaintiff to submit entirely new arguments and evidence in her Reply without giving Saba an opportunity to respond.

## REASONS FOR GRANTING THE PETITION

### I.  Standard of Review

Orders certifying a class are reviewed for abuse of discretion. *Nightingale v. Nat'l Grid USA Serv. Co., Inc*, 107 F.4th 1, 11 (1st Cir. 2024). A court abuses its discretion when it "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors." *Id.* A court also abuses its discretion when it "adopts an incorrect legal rule." *Id.*; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000)). Legal questions are reviewed *de novo*, and factual determinations are reviewed for

clear error. *See Aronstein v. Mass. Mut. Life Ins. Co*., 15 F.4th 527, 534-35 (1st Cir. 2021).

This Court in *Mowbray* described three "categories of cases that customarily would warrant the exercise of discretionary appellate jurisdiction," the second of which is "when the grant of class status raises the stakes of the litigation so substantially that the defendant likely will feel irresistible pressure to settle." *Mowbray,* 208 F.3d at 293. A petitioner proceeding under this category also must "demonstrate that the district court's ruling on class certification is questionable— and must do this taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id*. In addition, the "likelihood that a party will be forced to throw in the towel factors into the discretionary calculus." *Id*. at 293-94. This Court has since noted that a petition must identify some portion of the certification "analysis that is sufficiently 'questionable' to warrant immediate review" by this Court. *Romulus v. CVS Pharmacy, Inc.*, No. 17-8024, 2017 WL 7310384, at *1 (1st Cir. Dec. 21, 2017).

## II.     The District Court Abused its Discretion by Failing to Conduct a Rigorous Analysis of the Rule 23 Factors.

The district court has put "irresistible pressure" on Saba to settle a potentially aggregated damages claim that could approach $16 million (exclusive of attorneys' fees, costs, and interest), Dkt. 53-41, by granting the Motion without

7

any explanation of its ruling, while instructing Plaintiff to proceed with the class-certification notice "at once," setting the case for trial a few months from now, and explicitly stating that the defendants should "be talking about resolving this case" by settling. Additionally, the questionability of the district court's unarticulated certification analysis is plain. The district court acknowledged that this was a "very close question" and "particularly difficult," and indicated it might change its mind while drafting its opinion. Dkt. 98, at 13.

Before certifying a class, a district court must undertake a careful review of whether the plaintiffs have met their burden of proving each Rule 23(a) factor and one of the Rule 23(b) requirements. *See Smilow v. Sw. Bell Mobile Sys., Inc*., 323 F.3d 32, 38 (1st Cir. 2003).

The district court failed to conduct an analysis of the Rule 23 factors; the fact that there is no opinion against which to argue demonstrates this. This same district court (in another case) noted that it "must perform a 'rigorous analysis' [at certification] that will often 'entail some overlap with the merits of the plaintiff's underlying claim." *In re Nexium Antitrust Litig.*, 297 F.R.D. 168, 175 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (2015). The district court did not do so here, nor could it. Plaintiff did not give the court the tools by which it could analyze the Rule 23 factors. Plaintiff failed to identify the members of the class, to demonstrate any

common nucleus of law to apply to all claims, or to engage in any meaningful analysis of damages for any class member.

### A. Plaintiff did not establish numerosity because she made no evidentiary showing that any other person was affected as Plaintiff allegedly was.

As to numerosity, Plaintiff had the burden to show that the class includes numerous people and that they were harmed as she was. Fed. R. Civ. P. 23(a). Plaintiff failed to do either thing. Plaintiff purports to represent a class of persons who allegedly were misled by Saba's advertisements about the first-time USMLE Step 1 pass-rate, but she herself saw no such advertisement, only the emails that were sent directly to her. Dkt. 51, at 9.[5] Nor did she identify any person who had seen such advertisements or enrolled because of them. Moreover, Plaintiff proposed a class that did not reference any injury resulting from Saba's practices, and instead simply included all Saba students who did not take the Step 1 exam—regardless of the reason. The class thus includes students who left before taking Step 1 for financial, medical, or other personal reasons having nothing to do with plaintiff's theory of the case.

---

[5] The only "class members" Plaintiff attempted to identify were demonstrated not to be class members, as all of them passed Step 1, transferred to another medical school with their credits from Saba, or took a leave of absence and can return to Saba. Dkt. 71-1, at 76:19-81:13; Dkt. 70, ¶¶ 5-11.

Where a plaintiff does "not offer anything more than argument and speculation about whether and how the defendant's practices … affected anyone else," numerosity is lacking because there is "no evidentiary showing that any other person was affected as the plaintiffs were, let alone that there were numerous such persons." *Henry v. Bozzuto Mgt. Co.*, 159 N.E.3d 701, 707 (Mass. App. Ct. 2020); *see Makuc v. American Honda Motor Co.*, 835 F.2d at 389, 394-95 (1st Cir. 1987). Despite Plaintiff's failure to show that Saba's advertisements affected anyone, the court certified the class anyway, with no discussion of numerosity.

**B.     Plaintiff did not establish commonality or typicality because she failed demonstrate that Massachusetts law should apply to every class member.**

As to commonality and typicality, Plaintiff failed to identify any common issues. The most glaring deficiency in Plaintiff's commonality and typicality arguments was choice of law. Plaintiff simply assumed, making no attempt to demonstrate, that Massachusetts law should apply to every class member. Plaintiff cited to no case where a court certified a nationwide—much less worldwide—class on a *contested* certification motion under a single state's law, nor made any argument as to why the district court nevertheless should do so. Despite that, the district court decided to be the first.

A consistent, established body of law in this Circuit has held that under Massachusetts choice-of-law rules for fraud and misrepresentation, specifically

RESTATEMENT (SECOND) CONFLICTS § 148, the "law of the state in which a plaintiff took action in reliance on a defendant's representations applies." *S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007).[6] That body of law has until now included the district court here, which refused to apply the law of a defendant's home state to the claims of plaintiffs in other states in *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (Young, J.). In that case, the court noted that the "primary aim" of consumer protection laws "is compensating consumers, not policing corporate conduct" and held that the most "significant contact in this context [is] the location of the injury—that is, the location of the sales to the end payor plaintiffs." *Id.* The district court retreated from that body of law by certifying this class under Massachusetts law, the primary place of business of one of the defendants. It did not explain its rationale, however.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all

---

[6] *See also Camey v. Force Factor, LLC*, No. 14-14717-RWZ, 2016 WL 10998440, at *2-3 (D. Mass. 2016) (Massachusetts choice-of-law principles "have generated an unbroken string of opinions in which federal courts have refused to allow multi-state classes to pursue claims under" Chapter 93A); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 65 F.Supp.3d 283, 295 (D. Mass. 2014) (Massachusetts rules dictate that class members' consumer protection claims are governed by laws of their home states); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005).

suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011).[7] The Motion cited no advertisement to which any class member was exposed, and the class definition was not limited to those who saw an ad. Although Plaintiff claimed that Saba's "USMLE Step 1 representations" were "widely-disseminated," Plaintiff presented no evidence of such dissemination or that it was disseminated to any class member.[8] Dkt. 51, at 12, 15. Plaintiff did not identify which class members saw what ads (the language of the ads is not identical), nor demonstrate whether such ads influenced any student's enrollment decision. Plaintiff even admitted that the Step 1 pass-rate was not an important factor for her, that Saba was the only school to which she applied, and that Saba's rolling admissions process was the most important factor to her enrollment decision. Dkt. 71-1, at 14; Dkt. 69, at 9. Nothing in the Motion demonstrated that a class would generate common answers to any question to drive

---

[7] Typicality, similarly, is met when Plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse–AOL Sec. Litig*., 253 F.R.D. 17, 23 (D. Mass. 2008). That was not shown.

[8] When "the class action is based on alleged misrepresentations ... [denial of certification is appropriate] when individual evidence will be required to determine whether the representations at issue were actually made to each member of the class." *In re Celexa & Lexapro Mktg. & Sales Prac. Litig*., 291 F.R.D. 13, 20-21 (D. Mass. 2013).

resolution of the litigation. Yet, the district court certified the class, in abuse of its discretion.

**C.    Plaintiff did not establish predominance because she did not show that Chapter 93A could apply to each class member and over one third of the class will be subject to an individualized "discovery rule" inquiry.**

To obtain certification under Rule 23(b)(3), a plaintiff must "satisfy through evidentiary proof" each of its provisions, requiring that "the questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The predominance inquiry tests whether the court can deal with dissimilar class member claims in a manner that is not "inefficient or unfair." *Nightingale,* 107 F.4th at 11. *Nightingale* noted two specific inefficiencies defeating predominance: a line of class members "waiting their turn to offer testimony and evidence on individual issues" and attempts to "eliminate inefficiency by presuming to do away with the rights a party would customarily have to raise plausible individual challenges." *Id*. Both are implicated here.

Plaintiff did not demonstrate that Massachusetts law applied to any class member, even herself.  Saba demonstrated some of the variance in the applicable states' consumer protection laws, noting that some prohibit class actions, some require a showing of reliance, and all have varying limitations periods and tolling

regimes. Application of Massachusetts law to the class is itself an abuse of discretion.

But even if Massachusetts law applies, a "line of class members waiting to offer testimony" on Saba's limitations defense remains; preventing Saba from raising that defense is itself prejudicial. This Court has held that "limitations defenses are appropriate for consideration in the class certification calculus" and "should be considered in making class certification decisions." *Mowbray,* 208 F.3d at 295. This case presents individualized limitations issues even if the court applies Massachusetts law to the whole class.

Roughly one-third of the class enrolled at Saba prior to August 29, 2019; their claims are barred under Massachusetts's four-year limitations statute unless tolled by the "discovery rule." Dkt. 104-1, at 2; Dkt. 16, at 12. Application of that rule requires individualized inquiries of every student who enrolled prior to August 29, 2019, to determine when that class member discovered that Saba's first-time Step 1 pass rate does not include those who do not take the test, then apply that discovery date against the limitations period. Dkt. 69, at 14-15. Saba will have to depose a third of the class members—well over 100—between now and the close of discovery on November 8, 2024. *Id.*; Dkt. 35, at 2. A "necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3)." *Mowbray*, 208 F.3d at 296. While this Court

found that weight overcome in *Mowbray*, Plaintiff presented nothing to overcome it here, and certification of a class including those students was an abuse of discretion.

> **D.    Plaintiff did not establish predominance because she failed to show that the advertisements caused the claimed damages and failed to present an appropriate damages model capable of application on a classwide basis.**

Rule 23(b)'s predominance element separately "requires, in part, that plaintiffs establish at the class certification stage 'that damages are capable of measurement on a classwide basis' based on a methodology that is 'just and reasonable' rather than 'speculative.'" *Levy v. Gutierrez*, 448 F.Supp.3d 46, 64 (D.N.H. 2019) (quoting *Comcast*, 569 U.S. at 34-36). Any "model supporting a plaintiff's damages case must be consistent with its liability case" and "show that their damages stemmed from the defendant's actions that created the legal liability." *Id*.

There is no "per se" liability under section 9 of chapter 93A. *Nightingale*, 107 F.4th at 5. A mere violation of section 2—assuming one occurred in this case, which Saba denies—does not automatically give rise to an actionable injury. Instead, a plaintiff must identify a "distinct injury or harm" arising "from the claimed unfair or deceptive act itself." *Id*. Failure "to establish both factual causation and proximate causation is fatal to [a] Chapter 93A claim." *Walsh v. TelTech Sys., Inc*., 821 F.3d 155, 160 (1st Cir. 2016). To prove injury in a Chapter

93A case, a claimant must show "an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation itself." *Shaulis v. Nordstrom, Inc*., 865 F.3d 1, 10 (1st Cir. 2017); *see Hershenow v. Enterprise Rent–A–Car Co. of Bos., Inc.*, 840 N.E.2d 526, 535 (Mass. 2006).

The "harm" Plaintiff claims was not caused by Saba's ads. The alleged "harm" is that her two years of medical education are supposedly worthless. Even if Plaintiff saw Saba's ads and was influenced to attend Saba by them, which she acknowledged in her deposition was untrue, she was "harmed" by failing to pass her Basic Sciences courses resulting in her academic dismissal, not by the ads.[9] Plaintiff conceded that if she had passed all her classes, she would not have considered Saba's education worthless, Dkt. 71-1, at 55:4-8, and that the class does not include students who passed all their classes because "they were able to take the USMLE and get their degree." *Id.* at 50:8-19.

The certified class excludes those students who graduated or transferred and includes only those who failed out, dropped out, or were expelled. The intervening events that caused those students to fail out, drop out, or get expelled are the

_____

[9] Plaintiff admitted missing class often enough that she "was given warnings when [she] was approaching" the maximum allowed number of absences "more than once." Dkt. 71-1, at 28:1-12. When she failed a class, rather than retake it she "just created a study schedule for [her]self" and failed again, acknowledging to a friend that she "knew [she] wasn't going to [pass] because honestly [she] didn't study like [she] should have." *Id.* at 126:6-9, 134:6-16; Dkt. 71-4.

proximate cause of any injury, not the ads which none of them have been shown to have seen. Plaintiff has come forward with no evidence to demonstrate what those events were. The "causal connection" required by *Shaulis* and the "proximate cause" required by *Hershenow* simply cannot exist.

*Shaulis* disposed of the "violation as injury" model that the district court nevertheless adopted here. The plaintiff in that case, like Plaintiff here, analogized her injury to purchasing a "fake Rolex" watch. The *Shaulis* Court noted the disappointed plaintiff's allusion to "what she purchased as a 'phony designer sweater' but has made no allegations that Nordstrom ever represented it as such." 865 F.3d at 12. *Shaulis* noted that courts have: "declined to find injury under Chapter 93A where the plaintiff relies entirely on her subjective belief as to the value received [or] . . . were not grounded in any objective measure." *Id*. Plaintiff made the same argument here that *Shaulis* rejected, claiming that "she bargained for the Rolex" because Saba represented itself as "one of the world's leading international medical schools" and as providing a "top-notch medical education." *Id.* at 13. Here, the damages theory proposed by Plaintiff and seemingly adopted by the district court is identical to that rejected in *Shaulis*.

To support her damages theory, Plaintiff submitted Dr. William Pinsky's "expert" testimony for the first time in her Reply by way of declaration, which states that, unless a student graduates, the value of that student's education is zero.

Dkt. 83. Dr. Pinsky's declaration, however, is full of deficient and conclusory opinions—all which the district court accepted without questions and while denying Saba's request for an opportunity to submit rebuttal testimony. Dkt. 98.

After the certification hearing, Saba submitted the rebuttal expert opinion of Dr. Przemyslaw Jeziorski,[10] which disproves Dr. Pinsky's opinion on damages. Dkt. 103. Significantly, he notes that Dr. Pinsky's statement about the supposedly zero value of a partial medical education "contradicts a body of economic research," and he demonstrates several ways that students can "derive value…even without completing a degree" which would require an individualized damages assessment for each class member. *Id.* Dr. Jeziorski also shows the falsity of Dr. Pinsky's assumptions regarding attrition rates because, among other reasons, there is no standard definition of attrition rate, no requirement to publish the information, and such information is typically not emphasized in school informational and promotional materials. *Id.* The district court deprived Saba of the opportunity to supplement the certification record with this testimony after Plaintiff improperly disclosed her expert's opinion for the first time in the Reply. As explained in the following section, the district court abused its discretion by omitting this testimony. *See Nightingale*, 107 F.4th at 11 (district court abuses its

---

[10] Dr. Jeziorski is a Professor of Marketing at University of California, Berkeley, and responsible for, among other things, PhD graduate admissions yield and retention.

discretion when it, among other things, omits a significant factor in weighing class certification).

The district court's adoption of Plaintiff's "purchase as injury" damages theory rejects the *Comcast* warning against finding that "*any* method of measurement is acceptable so long as it can be applied classwide," because such "a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." 569 U.S. at 35-36. This decision will result in the certification of *every* purported class of disappointed purchasers who will claim their measure of damages is simply what they paid, with no offset of value received (because they were deceived) and that, because the value is assumed to be zero, no individual issues will arise.[11]

The damages theory which the district court adopted, that the value of a Saba education is zero unless you graduate,[12] is an abuse of discretion, as it contravenes the law of both this Circuit and Massachusetts. Such a damages theory is not capable of measurement on a classwide basis.

---

[11] The cases Plaintiff cited to support this theory were government enforcement actions that are inapposite; such actions do not seek "damages," but rather, fines or restitution, Dkt. 104-1, at 3, and they do not attempt to meet Rule 23's requirements.

[12] Another judge of the same district recently denied class certification in *Omori v. Brandeis Univ.*, 673 F.Supp.3d 21, 28 (D. Mass. 2023), where the court found that damages implicated several subjective and individualized questions to determine the value of online education.

**III.  The District Court Abused its Discretion by Allowing Plaintiff to Submit Entirely New Arguments and Evidence in Her Reply Without Giving Defendants an Opportunity to Respond.**

The district court abused its discretion by allowing Plaintiff to submit entirely new arguments and evidence on her Reply over Saba's objection, without allowing Saba an opportunity to rebut that evidence, violating both Local Rule 7.1(b) of that Court and general concepts of fairness to the parties.

On August 15, 2024, Plaintiff filed her Reply, which included six pages of new argument about choice of law and 11 pages about a damages "model" not mentioned in her Motion, and it was supported by, among other new items, an opinion on damages from Dr. Pinsky, who had never been disclosed, was plainly unqualified to opine on the matters he addressed, and whose testimony was inadmissible due to lack of foundation. Saba moved to strike portions of the Reply and the Pinsky declaration, but the district court denied that motion by line entry during the Motion hearing without explanation.

Local Rule 7.1(b)(1) states that "[a]ffidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion," and that, "[a]ll other papers not filed as indicated in subsections (b)(1) and (2), whether in the form of a reply brief or otherwise, may be submitted only with leave of court." *Id.* 7.1(b)(3). No leave was requested or given to file the new items, including the Pinsky opinion, attached to Plaintiff's Reply.

Additionally, the law in this Circuit is plain: "arguments available at the outset but raised for the first time in a reply brief need not be considered." *United States v. Tosi*, 897 F.3d 12, 15 (1st Cir. 2018); *see Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F.Supp.2d 298, 349 (D. Mass. 2010). Despite this, the district court both accepted the new arguments and evidence in Plaintiff's Reply, refusing Defendant's motion to strike, and seemingly relied entirely on those arguments and evidence in granting Plaintiff's Motion. Saba cannot state this definitively, because the district court gave no explanation for this or any other rulings it has made since the filing of this case. This resulted in prejudice to Saba.

## **CONCLUSION**

The district court abused its discretion by certifying, without explanation, a worldwide class under the consumer protection law of a single state, adopting a damages theory that has been expressly rejected under that law by both this Court and that state, and doing so without requiring Plaintiff to meet any of the requirements of Rule 23, while suggesting that Saba "ought to be talking about resolving this case" and not appealing. That is precisely the sort of imbalance Rule 23(f) is designed to address via interlocutory appeal. Accordingly, Saba respectfully requests that this Court grant its Petition and vacate the district court's line order on class certification, and for such other and further relief as this Court deems just and appropriate.

Saba University School of Medicine and
R3 Education, Inc.,


*Daryl J. Lapp*
Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*


Dated:  October 15, 2024

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Petition complies with Fed. R. App. P. 5(c) and 32(a). This document is proportionally spaced and complies with the typeface of 14-point font and length limitations, containing 5,151 words—exempting the parts of the document exempted by Rule 32(f).


*Daryl J. Lapp*
Daryl J. Lapp

## CERTIFICATE OF FILING AND SERVICE

I certify that on October 15, 2024, a copy of this Petition was filed via this Court's CM/ECF system and that all parties required to be served have been served.

*Daryl J. Lapp*
Daryl J. Lapp

# ATTACHMENT

**Vieno, Cynthia**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Tuesday, October 1, 2024 12:22 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:23-cv-12002-WGY Ortiz v. Saba University School of Medicine et al Order on Motion to Certify Class |

**\*\* External Email -- Sender: ECFnotice@mad.uscourts.gov \*\***

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### United States District Court

### District of Massachusetts

## Notice of Electronic Filing

The following transaction was entered on 10/1/2024 at 12:21 PM EDT and filed on 9/17/2024

| | |
|---|---|
| **Case Name:** | Ortiz v. Saba University School of Medicine et al |
| **Case Number:** | 1:23-cv-12002-WGY |
| **Filer:** | |
| **Document Number:** | 102(No document attached) |

**Docket Text:**
**Electronic Clerk's Notes for proceedings held before Judge William G. Young: Motion Hearing held on 9/17/2024 re [50] MOTION to Certify Class MOTION to Appoint Counsel filed by Natalia Ortiz. After hearing arguments of counsel, the Court enters an order granting [50] Motion to Certify Class; granting [50] Motion to Appoint Counsel. The class will exclude those stated on the record. This ruling is subject to a written decision and is subject to revision upon written opinion. (Court Reporter: Richard Romanow at rhr3tubas@aol.com.)(Attorneys present: Attorneys Siller and Egan for the plaintiff; Attorneys Lapp, Evans and McMorrow for he defendants) (Gaudet, Jennifer)**

**1:23-cv-12002-WGY Notice has been electronically mailed to:**

Daryl J. Lapp     daryl.lapp@lockelord.com, cynthia.vieno@lockelord.com, laura.verdecchia@lockelord.com, nathalie.vega@lockelord.com

Patrick T. Egan     pegan@bermantabacco.com, bdentremont@bermantabacco.com

Alexander Elson     alex@defendstudents.org, pleadings@defendstudents.org

Daniel Zibel     dan@defendstudents.org

Margaret Siller     msiller@maynardnexsen.com, catherine.hewston@maynardnexsen.com, jalfordjr@maynardnexsen.com

Michael J McMorrow     michael.mcmorrow@lockelord.com, AutoDocket@lockelord.com, shauntanyse.james@lockelord.com

Dale Evans, Jr     dale.evans@lockelord.com, autodocket@lockelord.com, tina.sullivan@lockelord.com

John Robison Alford, Jr     jalfordjr@maynardnexsen.com

Nathalie Marie Vega Crespo     nathalie.vega@lockelord.com

**1:23-cv-12002-WGY Notice will not be electronically mailed to:**

```
 1              UNITED STATES DISTRICT COURT

 2              DISTRICT OF MASSACHUSETTS (Boston)

 3                          No. 1:23-cv-12002-WGY

 4

 5   NATALIA ORTIZ, on behalf of herself and a
     class of similarly-situated persons,
 6                    Plaintiff

 7   vs.

 8

 9   SABA UNIVERSITY SCHOOL OF MEDICINE, et al,
                   Defendants

10

11                      * * * * * * * * *

12

13                    For Hearing Before:
                      Judge William G. Young
14

15                   Motion to Certify a Class

16

17               United States District Court
                 District of Massachusetts (Boston)
                 One Courthouse Way
18               Boston, Massachusetts 02210
                 Tuesday, September 17, 2024
19

20
                         * * * * * * * *
21

22           REPORTER: RICHARD H. ROMANOW, RPR
                  Official Court Reporter
23               United States District Court
         One Courthouse Way, Room 5510, Boston, MA 02210
24                    rhr3tubas@aol.com

25
```

```
 1                   A P P E A R A N C E S

 2

 3   MARGARET SILLER, ESQ.
      CHRISTINA FITZGERALD, ESQ.
 4        Maynard Nexsen, P.C.
          1131 4th Avenue S, Suite 320
 5        Nashville, TN 37210
          (629) 258-2253
 6        Email: Msiller@maynardnexsen.com
     and
 7   PATRICK T. EGAN, ESQ.
          Berman Tabacco
 8        One Liberty Square
          Boston, MA 02109
 9        (617) 542-8300
          Email: Pegan@bermantabacco.com
10        For Plaintiff and class

11

12   MICHAEL J. McMORROW, ESQ.
      DARYL J. LAPP, ESQ.
13   DALE EVANS, ESQ.
          Locke Lord, LLP
14        111 South Wacker Drive, Suite 4100
          Chicago, IL 60606
15        (312) 443-0700
          Email: michael.mcmorrow@lockelord.com
16        For Defendants

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S
 2          (Begins, 2:50 p.m.)
 3          THE CLERK:  Now hearing Civil Matter 23-12002,
 4   Ortiz vs. Saba University School of Medicine.
 5          THE COURT:  And would counsel identify themselves.
 6          MS. SILLER:  Good afternoon, your Honor, Margaret
 7   Siller on behalf of Ms. Ortiz and the putative class.
 8          MR. EGAN:  Patrick Egan, from Berman Tabacco, on
 9   behalf of the plaintiff.
10          MS. FITZGERALD:  Christina Fitzgerald on behalf of
11   the plaintiff.
12          THE COURT:  Thank you.
13          MR. McMORROW:  Good afternoon, your Honor, Mike
14   McMorrow, Locke Lord, on behalf of the defendants Saba
15   University and R3 Education Inc., and with me today are
16   Dale Evans and Daryl Lapp of the same firm.
17          THE COURT:  And good afternoon to you all.  Let me
18   take, um -- let me address some preliminary matters.
19          There's a discovery issue which I have resolved,
20   that's it for document discovery.  There's a motion to
21   strike.  The motion to strike is denied.  All right,
22   those are the preliminary matters.
23          This is the -- when is this case on for trial?
24          MS. SILLER:  February 9th, your Honor, 2025.
25          THE COURT:  All right.  So tell me what class you
```

1  want -- describe the class as you would have me order

2  it.

3        MS. SILLER:  The class is everyone that went to

4  Saba.

5        THE COURT:  Starting when?

6        MS. SILLER:  Starting from September 1st, 2017 to

7  the present, that has not taken the USMLE.

8        THE COURT:  All right.  Now, um -- 2017.

9        One of the curious things -- but this may well be

10  my own ignorance.  When you read these papers, it

11  doesn't look like Ms. Ortiz, your named representative

12  here, doesn't look like she relied on this deceptive

13  advertisement at all.

14        You don't have to prove reliance in this case?

15        MS. SILLER:  Correct, your Honor, we don't have to

16  prove reliance under 93A.

17        THE COURT:  And what -- I see.  Okay.  Under 93A.

18  And so the deceptive, um -- the deceptive advertising

19  alone will do it for you?

20        MS. SILLER:  Well the causation standard under

21  Rule 23 is that it's an objective test, so would it

22  reasonably have affected a student's decision-making in

23  attending the school?

24        THE COURT:  "Would it have"?

25        MS. SILLER:  Yes.  And so -- and as we pointed out

1    here, this is an orchestrated campaign that was across

2    Saba's and R3 Education's digital footprint, it was sent

3    to prospective students, it was on their website, it was

4    on their --

5         THE COURT:  I understand, I've read the papers,

6    and for that I, um -- that's the only reason I interrupt

7    here.

8         Let me ask this.  And then your theory of damages

9    is because you have to pass this test that -- so people

10   who attended and never even sat for that test in order

11   to pursue and ultimately become a licensed physician,

12   your theory is those who attended didn't even sit for

13   the test and your, um, measure of damages is what they

14   paid?

15        MS. SILLER:  Correct, it's the refund of their

16   tuition fees and costs.

17        THE COURT:  All right.  How -- what about those,

18   if any there be, who, um, transferred credits and

19   credits were accepted by other medical schools, were

20   there any such people?

21        MS. SILLER:  Well, your Honor, I think we would

22   point to the **_Figgy_** model and its progeny in terms of the

23   fraud in the selling here, they made material

24   misstatements about the kinds of --

25        THE COURT:  No, no, but this is damages.  Damages.

1    So when you -- your measure of damages is everything,

2    and I follow it.  But if you transferred some credits,

3    you got something?

4          MS. SILLER:  We would disagree.  We don't --

5    there's no value to the transfer of credits.  Under

6    *Figgy*, you should receive a full refund with no value

7    offsets.  That being said, the ability of these students

8    to actually transfer to other schools is nearly

9    impossible, they can only transfer to another Caribbean

10   school, many of which are also operated by R3 Education.

11         THE COURT:  But did it happen?

12         MS. SILLER:  Your Honor, I don't think we have

13   sufficient discovery to know how many people made --

14         THE COURT:  Suppose you win but I exclude the, um,

15   anyone who transferred credits, that they can bring

16   their own actions, is that all right?

17         MS. SILLER:  I mean we would -- we would disagree

18   with that under the case law, but, um -- because there

19   should not be any sort of value offset for any of their

20   transferred credits.

21         THE COURT:  Okay.  All right.

22         MS. SILLER:  And Dr. --

23         THE COURT:  All right.  Then how -- since you want

24   -- in essence you want a nationwide class, um, and

25   that's a real issue here.  They take issue with that.

1   Now the deceptive advertising, if there was deceptive

2   advertising, that originated in Massachusetts, but it

3   went far beyond the borders of Massachusetts.

4       Why -- in 93A, why should I, um, resolve that

5   nationwide class arguably can get recovery under the

6   laws of Massachusetts?

7       MS. SILLER:  Of course, your Honor.

8       The defendants contend that the place of reliance

9   is the only factor that should be considered in choice

10  of law, but this is incorrect.  First of all, if that

11  were the case, no out-of-state plaintiff could ever

12  bring a case under 93A here, and we know that

13  contradicts the case law in *Geis* and *Cristostomo*.

14      In addition, they fail to acknowledge that the

15  Massachusetts Supreme Judicial Court has adopted more of

16  a functional approach to choice of law, it's not a rigid

17  categorical rule.  And under that principle -- and under

18  that functional test, you should look to the state with

19  the most significant relationship.  And as your Honor

20  pointed out, all of the ads are submitted from here, all

21  of the, um, higher executives that approve those ads

22  reside here or are employed here.  It was a widely-

23  disseminated campaign.

24      And so we would say that Massachusetts has the

25  most significant relationship with the class here.  And

```
 1    there is evidence, contrary to what defendant said, in a

 2    contested class motion where 93A has been used to

 3    certify the nationwide class.

 4          THE COURT:  Thank you.

 5          Other matters that you want to specifically bring

 6    to my attention?

 7          MS. SILLER:  No, your Honor, but we're happy to

 8    address any questions.  I think the choice of law and

 9    the damages are the two primary issues that the

10    plaintiffs raise.

11          THE COURT:  Thank you.  And I'll hear the

12    defendant.

13          MR. McMORROW:  Thank you, your Honor.  May it

14    please the Court, Mike McMorrow on behalf of the

15    defendants.

16          Your Honor, um, 4.3, as this Court has itself

17    stated, it requires a rigorous analysis of the factors

18    of 23(a) and 23(b)(3).  And the plaintiff simply hasn't

19    given the Court the tools to engage in that analysis.

20          The plaintiff failed to demonstrate that she meets

21    any of the factors of 23(a).  She failed to demonstrate

22    that she meets any of the factors of 23(b)(3).  She's

23    failed to demonstrate that subsequent Massachusetts law

24    should apply to the claims of these students.

25          THE COURT:  Well that's conclusory, tell me why?
```

```
 1          MR. McMORROW:  The simple reason why, your Honor,
 2     is that you have to go through the Section 148 of the
 3     Restatement analysis of choice of law.  We are in a
 4     court in Massachusetts, the Massachusetts choice-of-law
 5     analysis relies.  I've cited five different cases in my
 6     opposition brief, *Faherty*, *In Re Pharmaceutical Industry*
 7     *Average Wholesale Price Litigation*, *Southern States*
 8     *Police Beneficial Association, In Re Celexa*, and *Lexapro*
 9     *Marketing Sales Litigation*, all of which went through
10     this analysis, came to the conclusion that, um,
11     Massachusetts choice of law -- Massachusetts choice-of-
12     law principles dictate that you cannot certify a
13     nationwide class under 93A.
14          And the reason behind all of those is something
15     that your Honor has said in the *In Re Relafen* case.
16     This Court said, "Because the primary aim of consumer
17     protection law is generally compensating consumers and
18     not policing corporate conduct, the more significant
19     contact -- not the only contact, not the only meaningful
20     contact, but the most significant one is the location of
21     the injury, that is the location of the sales of the
22     impaired plaintiffs."  Plaintiff cites to this best to
23     spark the idea that uniform application of 93A would be
24     appropriate, but it points in exactly the opposite
25     direction.  There are huge factors here that --
```

1      THE COURT:  Well is it -- or does it rather, where

2  the deceptive actions and statements all took place here

3  in Massachusetts, isn't a purpose of the Massachusetts,

4  um, Consumer Protection Act, which is -- which is to be

5  broadly construed, is to protect against fraudsters?

6      MR. McMORROW:  That's part of it, but the main

7  purpose of the Consumer Protection Act of Massachusetts,

8  and all of the other states, is the protection of the

9  consumers who live in those states.  And the few cases

10  that the plaintiff cited that have certified a

11  nationwide class under 93A only did it in the context of

12  the settlement.

13      *Cristostomo vs. New Balance Athletics,* which she

14  cites, she relies on it to say that 93A provides a

15  sufficient basis for a nationwide claim.  It was not a

16  class certification decision, it was a motion to

17  dismiss.  As you've said five times already in this

18  court today, you have to indulge the plaintiff on a

19  motion to dismiss.  You don't have to indulge the

20  plaintiff on a Rule 23 decision.  It's her -- it was the

21  plaintiff's job to bring the Court the evidence to make

22  this choice of law analysis and the plaintiff simply

23  hasn't done it.

24      *Geis vs. Nestle Waters*, the same thing, it was

25  also a motion to dismiss, um, not a contested motion.

1      *Conway vs. Planet Fitness Holdings,* she cited as

2   supporting her, um, that case itself is squarely on

3   point and it demonstrates conclusively that

4   Massachusetts law cannot apply to the plaintiffs' claim.

5   The Court applied the same Restatement analysis that we

6   talk about here, Section 148, and found that

7   Massachusetts law applied because the plaintiff lived

8   there.

9         The Court stated that the plaintiff's residency is

10   a contact of particular concern.  It's not the only

11   contact, it's not the only factor, but in every case

12   that has analyzed this under Section 148 of the

13   Restatement, whether it's in Massachusetts or other

14   states that follow Section 148 of the Restatement,

15   they've all come out the same.

16         THE COURT:  Thank you.  All right.

17         MR. McMORROW:  If your Honor would like to hear

18   about damages, um, I think we've made the point in our

19   brief.  They simply don't have a damages theory.  And

20   under --

21         THE COURT:  Well it's a rather simplistic theory,

22   but they have a theory, it doesn't deal with those

23   people who may have, if any there be, um, had credits

24   accepted by some other medical school, but, um -- it's a

25   simplistic theory, but it is a theory.

1    MR. McMORROW:  Right, but it's also a theory that

2  doesn't comport with, um, *Shaulis*.

3    *Shaulis*, which is First Circuit precedent, says

4  that under 93A -- even if you assume that 93A is the law

5  that applies to everyone's claims, okay, *Shaulis* says

6  that there has to be a causal connection between the

7  act, i.e. the advertisement, and the plaintiffs'

8  damages.  Okay?  It's not -- the theory that we were

9  deceived and therefore the fact that we were deceived

10  and bought the product is our damages, that is exactly

11  what was rejected by *Shaulis*.

12    *Shaulis* says that there has to be a causal

13  connection here, and she hasn't demonstrated it, she

14  hasn't given the Court the tools to show that she will

15  be able to show a causal connection between any class

16  member and these ads.  She hasn't shown any class member

17  that saw any of the ads, she hasn't shown any class

18  member that --

19    THE COURT:  But she's right though, under 93A

20  reliance is not an element?

21    MR. McMORROW:  Reliance is not, but causal

22  connection is a -- there can be no causal connection

23  between the ads and the damages, if the class member

24  never saw the ad.  Not to mention that there's two years

25  of education and what each class member did during those

1  two years that goes into that analysis as well.

2      Plaintiff herself was not a very good student,

3  okay?  How she did in school is part of that causal

4  connection between the ad and her damages.  She said

5  herself that if she had passed her classes she wouldn't

6  have been damaged.

7      THE COURT:  All right.  Thank you.

8      MS. SILLER:  Your Honor, if I may be heard in

9  response?

10      THE COURT:  No, I don't think that's necessary

11  based on that argument.

12      Here's what we're going to do.  This is a very

13  close question here, one that I find particularly

14  difficult, and I'll make no bones about it, but I'm

15  going to allow your motion for class certification, I'm

16  going to allow it in the language that you -- you,

17  plaintiffs, propose, with a modification that the class

18  will exclude anyone who, um, (1) transferred credit to

19  another school, or (2) failed to pass a majority of the

20  classes that they took, or enrolled, otherwise I will

21  allow this.

22      This ruling is subject to, um, a written opinion.

23  The discipline of writing is an appropriate discipline

24  and I'm going to have to write this up, and I will, but

25  your time is very short here, so you're going to have to

1    undertake notification of the class, as I've defined it,

2    um, at once.  That's the ruling of the Court.

3         Subject to the risk that when I, um -- when I

4    write my opinion, I, um, conclude, on further review,

5    that it just won't work and I decertify the class.  But

6    for now, because time is of the essence, that's the

7    order of the Court, subject to the Court's written

8    opinion.

9         All right, that's the order.

10        (Pause.)

11        MR. McMORROW:  Your Honor?

12        THE COURT:  Yes?

13        MR. McMORROW:  There's a procedure under Rule

14    23(f) for the, um -- for us to seek review of that

15    order.

16        THE COURT:  I deny it.

17        MR. McMORROW:  Okay, thank you.

18        THE COURT:  Which of course does not preclude you,

19    but -- well real world you people ought to be talking

20    about resolving this case, but I'm sure you are.

21    Secondary, I haven't done you out of your appeal by

22    denying it.  If you don't like the written opinion, if

23    I -- if I stick to what I have said from the bench

24    today, they'll be time to appeal and you'll have

25    something that you can pick apart.  It just seems more

```
 1   logical.
 2        Am I missing anything when I say that?  If you
 3   want to appeal, go right ahead and appeal, but for now
 4   it's denied.
 5        Am I making sense?
 6        MR. McMORROW:  I understand what you're saying,
 7   your Honor.
 8        May I ask another question?
 9        THE COURT:  Of course.
10        MR. McMORROW:  Okay, so you have changed the class
11   definition here, you've said that --
12        THE COURT:  I have.
13        MR. McMORROW:  -- what needs to be excluded are
14   people who, um, have transferred or had failed more than
15   half of their classes?
16        THE COURT:  That's fair.
17        MR. McMORROW:  Okay.  There are also a number of
18   students -- first of all, you would be dismissed from
19   the school if you failed significantly fewer than half
20   of your classes, this is medical school.  I think that
21   setting it at half is a little arbitrary, your Honor.
22        The second thing I would say is, um, there are a
23   number of students who simply dropped out of school for
24   a variety of reasons, um, financial, or they simply
25   didn't want to go.
```

```
 1        THE COURT:  But then they've paid less, haven't

 2   they?  And, um, so that's a difficulty that I have.

 3        You know the very first sentence in Judge Keeton's

 4   really seminal work, and I hold him as a hero judging in

 5   the American legal sentence, is this sentence:  "Judging

 6   is choice, a judge has to do that."  That's what I'm

 7   doing.

 8        MR. McMORROW:  I understand that.

 9        THE COURT:  What we're about is really the highest

10   calling of the attorney.  Arguments have been made.

11   Good briefs have been filed.  I've now dealt with it.

12   Obviously we're not sitting still, it's a dynamic.  So

13   if you have something to say, I'm writing the thing up,

14   so feel free.

15        MR. McMORROW:  Thank you, your Honor.

16        THE COURT:  Does that address what you're

17   concerned with?

18        MR. McMORROW:  Um, that partially addresses it.

19        THE COURT:  The rest of it you can put in writing.

20        MR. McMORROW:  Thank you, your Honor.

21        THE COURT:  Thank you.  Thank you all.

22        (Ends, 2:15 p.m.)

23

24

25
```

```
 1                    C E R T I F I C A T E

 2

 3          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

 4     do hereby certify that the foregoing record is a true

 5     and accurate transcription of my stenographic notes,

 6     before Judge William G. Young, on Tuesday, September 17,

 7     2024, to the best of my skill and ability.

 8

 9

10
       /s/ Richard H. Romanow 09-23-24
11     _____
       RICHARD H. ROMANOW  Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```