# EXHIBIT A

No. 24-8030

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

NATALIA ORTIZ,
on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

SABA UNIVERSITY SCHOOL OF MEDICINE, and R3 EDUCATION, INC.,

Defendants-Petitioners.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(The Honorable William G. Young, Case No. 1:23-cv-12002-WGY)

_____

**Reply in Support of Petition to Appeal Class Certification
Pursuant to Federal Rule of Civil Procedure 23(f)**

_____

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

# <u>TABLE OF CONTENTS</u>

ARGUMENT ...................................................................................................1

I.     Plaintiff Misrepresents the Record. .......................................................1

II.    Plaintiff Misrepresents the Standard for Interlocutory Review
Under Rule 23(f), Which Saba Has Satisfied. ......................................2

III.   Plaintiff's Opposition Mischaracterizes the Case Law and
Relies on Inapplicable Cases. ...............................................................3

      A.    Chapter 93A does not apply to the entire worldwide
             class. ...........................................................................................4

      B.    Damages are not capable of measurement on a classwide
             basis and there is no causal connection between the
             alleged unlawful act and class's injury. ....................................6

IV.   The District Court's Abuse of Discretion in Allowing Plaintiff's
New Arguments and Evidence Through Reply Brief is Relevant
and Properly Raised. ..............................................................................9

CONCLUSION ..............................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997)..................................................................4

*AMG Cap. Mgmt., LLC v. F.T.C.,*
  141 S. Ct. 1341 (2021)..............................................................8

*Anoush Cab, Inc. v. Uber Techs., Inc.,*
  8 F.4th 1 (1st Cir. 2021)...........................................................7

*Bezdek v. Vibram USA,*
  79 F. Supp. 3d 324 (D. Mass. 2015)........................................5

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013)....................................................................6

*Cristostomo v. New Balance Athletics, Inc.,*
  647 F. Supp. 3d 1 (D. Mass. 2022).........................................5

*Geis v. Nestlé Waters N. Am., Inc.,*
  321 F. Supp. 3d 230 (D. Mass. 2018).....................................5

*Haddad v. Gonzalez,*
  576 N.E.2d 658 (Mass. 1991)..................................................8

*Herbert v. Vantage Travel Serv., Inc.,*
   334 F.R.D. 362 (D. Mass. (2019..............................................5

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC,*
  2024 WL 1558177 (D. Mass 2024).........................................8

*In re M3 Power Razor,*
  270 F.R.D. 45 (D. Mass. 2010).................................................5

*In re Nexium,*
  297 F.R.D. 168 (D. Mass. 2013), *aff'd* 777 F.3d 9................6

*Omori v. Brandeis Univ.*,
    673 F. Supp. 3d 21 (D. Mass 2023) ........................................................................8

*In re Relafen Antitrust Litig.*,
    221 F.R.D. 260 (D. Mass. 2004)............................................................................5

*Waste Mgt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)............................................................................2, 3

**STATUTES AND RULES**

Fed. R. Civ. P. 23(f) ......................................................................................2, 3, 10

FTC Act.............................................................................................................7

FTC Act, 15 U.S.C. §45(m)(1)(A-B) ....................................................................8

Mass. Gen. Laws §§ 4, 9 ....................................................................................7

Rule 12(b)..........................................................................................................4

Rule 23 ...............................................................................................3, 4, 7, 10

Rule 23(b)(3) .....................................................................................................6

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) CONFLICTS § 148 ..........................................................5

## ARGUMENT

### I.    Plaintiff Misrepresents the Record.

Plaintiff states that Petitioners "go to great lengths to conceal that their Step 1 rates only account for roughly half the students who enroll." Opp. at 2. The entire premise of Plaintiff's argument is misleading. A "first-time" pass rate necessarily includes only those students who advanced through the two-year Basic Sciences portion of the MD program and sat for the exam.

As authority for her assertion about "concealment," Plaintiff cites to Dr. Pinsky's "expert" opinion [Dkt. 83, at 5-6], which says nothing about Saba concealing anything, and references no evidence to support such a statement. The other item that Plaintiff cites in support is a forward-looking projection [Dkt. 84-20], which contains "assumptions by semester" of future enrollment and says nothing about the percentage of Saba students who sit for the USMLE Step 1 exam. Pinsky admitted that his testimony about that rate is based solely on "representations made to [him] by Plaintiff's counsel," [Dkt. 83, ¶ 21], and cites no other evidence for it.

Plaintiff also falsely claims that the Saba admissions staff was trained to "dodge questions from prospective students about attrition," and that "Defendants routinely misled or even outright lied to prospective students." Pl. Opp. at 3. Plaintiff's citations are not to evidence, but to Plaintiff's own characterizations. As

the record evidence demonstrates, Saba admissions staff did not dodge questions about attrition—there is no generally accepted definition or calculation for attrition, no regulatory requirement to publish an attrition rate, and Saba has not adopted or maintained an official calculation for attrition. Further, Plaintiff has presented no record evidence that any of the statements cited in the brief are false or misleading, [Dkt. 82, at 3, fn. 12-13], and there is nothing cited to suggest they are.

## II.    Plaintiff Misrepresents the Standard for Interlocutory Review Under Rule 23(f), Which Saba Has Satisfied.

Plaintiff's focus on Saba's alleged failure to demonstrate "irresistible pressure to settle" under *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000), is misplaced in two respects.

First, Plaintiff argues that a $16 million class judgment might not be "ruinous" to Saba because the record "reveals" that R3 owns other for-profit medical schools.[1] But Plaintiff is asking for ***all*** tuition and fees from all unsuccessful students (even those who withdrew voluntarily) to be refunded, which she claims is half the enrolled students—without taking interest, attorneys' fees, or

---

[1] The financial data that Plaintiff cites is not from Saba, but from Global University Systems Holding, BV—a different, foreign entity which is not a party to this case and only purchased R3 recently. The other information regarding student loans disbursed also encompasses other schools rather than Saba's financial data. Plaintiff also omits important information as to expenses and net revenue. The Court should not consider this irrelevant and incomplete data.

potential treble damages into account. In fact, Saba's records show that its annual net income during 2020-2023 have been mainly losses, and R3 is a stand-alone entity that does not generate material revenue of its own and simply receives modest management fees from its subsidiary medical schools for support services provided. *See* Declaration of Terry Moya attached. Additionally, Saba has presented multiple grounds demonstrating the "significant weakness" in the district's court ruling, which lacks any rationale, much less the rigorous analysis required by Rule 23. Pet. at 7-19.

Second, while this Court "ordinarily" will grant leave to appeal when a Rule 23(f) application falls into one of the three categories the Court described in *Mowbray*, the Court emphasized that it can similarly "grant leave to appeal in cases that do not match any of the three categories." *Id.* at 294. In *Mowbray*, the Court granted leave to appeal under an abuse of discretion standard, holding that a district court abuses its discretion when it "relies significantly on an improper factor, omits a significant factor, or makes a clear error of judgment in weighing the relevant factors." *Id.* at 295. Saba's petition makes just such a showing in this case.

## III. Plaintiff's Opposition Mischaracterizes the Case Law and Relies on Inapplicable Cases.

Instead of addressing Saba's argument that the district court abused its discretion by failing to conduct a rigorous analysis of the Rule 23 factors and

explain how the court properly reached its decision, Plaintiff mischaracterizes and relies on inapplicable case law to support her contention that Saba failed to demonstrate significant weakness in the district court's decision.[2]

### A.    Chapter 93A does not apply to the entire worldwide class.

Plaintiff attempts to convince this Court to accept cases having nothing to do with class actions or contested certification hearings as precedent supporting certification of this case. Those cases have no bearing on the propriety of class certification here. Some involve settlements where standards are relaxed,[3] some involve Rule 12(b) decisions where certification was not at issue, and some are government enforcement actions, dealing neither with Rule 23 nor with "damages" at all.

Again, Plaintiff leads with falsehood, representing that Saba claimed, "there are no cases where a nationwide Chapter 93A class was certified." Opp. at 16. What Saba *actually* said was "Plaintiff cited no case where a court certified a nationwide . . . class on a contested certification motion under a single state's law."

---

[2]  Plaintiff repeatedly refers to the district court's decision as "properly consider[ing]" and "reject[ing]" arguments, which is pure speculation. Opp. at 12. The district court did not provide its rationale for its ruling during the class certification hearing, or thereafter.

[3]  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").

Pet. at 10. Saba's actual statement is true.[4] The cases Plaintiff cited to the district court as authority all involved settlement classes,[5] single-state classes, or classes proceeding under federal law. *See* Dkt. 69, Appendix A. The cases Plaintiff cites here to support application of Massachusetts law to out-of-state plaintiffs were not class certification decisions, either.[6]

Plaintiff devotes five pages to Massachusetts's "functional" approach to choice of law without ever mentioning RESTATEMENT (SECOND) CONFLICTS § 148, which is the basis of Massachusetts's choice of law analysis, or mentioning the fact that the district court followed that same analysis until this case. Pet., at 11, citing *In re Relafen Antitrust Litig*., 221 F.R.D. 260, 277 (D. Mass. 2004).

---

[4] Plaintiff cites to *Herbert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 374 (D. Mass. 2019), as authority for her position, Opp. at 16, but she did not cite it below. Had she done so, Saba would have correctly noted *Hebert* never discussed choice of law, suggesting it was never raised in that case.

[5] Plaintiff cites *Bezdek v. Vibram USA*, 79 F. Supp. 3d 324, 339 (D. Mass. 2015), and *In re M3 Power Razor*, 270 F.R.D. 45, 56 (D. Mass. 2010), as authority for certifying a nationwide class under Massachusetts law. Opp. at 16. Both cases were settlements.

[6] *Geis v. Nestlé Waters N. Am., Inc.*, 321 F. Supp. 3d 230, 241 (D. Mass. 2018), and *Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1, 14 (D. Mass. 2022), both involved rulings on motions to dismiss. No certification motion was even filed in either case.

**B.**     **Damages are not capable of measurement on a classwide basis and there is no causal connection between the alleged unlawful act and class's injury.**

Chapter 93A requires a causal connection between the offensive act and the injury. Pet. at 15-17. No causal connection was shown for either Plaintiff or the class, as discussed below. But both Plaintiff and the district court have confused that requirement of a causal connection with the erroneous idea that "reliance" is required to state a Chapter 93A claim. Opp. at 12; Dkt. 98, at 12. "Reliance" is not required; a "causal connection" is required.

Plaintiff claims it is "risible" that Saba argued to the district court that she put forward no damages theory. Opp. at 17, *citing* Dkt. 69, at 7. A cursory review of her certification motion, however, confirms this. Plaintiff cited a single, unpublished enforcement action by the Massachusetts Attorney General in an uncontested case against a defunct school as her authority for a full refund of all class members' tuition. Dkt. 69, at 7, 16. This does not meet the standards set in the district court's prior holdings that "the moving party [must] present a damages model that directly reflects and is linked to an accepted theory of liability under Rule 23(b)(3)." *In re Nexium*, 297 F.R.D. 168, 183 (D. Mass. 2013), *aff'd* 777 F.3d 9; *see also Comcast Corp.*, 569 U.S. 27, 35 (2013) (damages model must be consistent with liability case). Plaintiff simply presented no damages model at all until her Reply.

When Saba pointed out her lack of a damages theory, Plaintiff pivoted on Reply, citing a bevy of enforcement actions as authority for her "full refund" damages theory. Saba was not allowed to respond to them. Assuming the district court accepted those cases, which is unclear, that would be an abuse of discretion. The standards Massachusetts sets out in its own laws have nothing to do with the standards for certification under Rule 23 or proof of damages in a certified class.

The cases Plaintiff cites show what was already apparent from the statute itself: FTC and attorney general interpretation is to be considered as to section 2(a) of Chapter 93A only, which states that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Courts may look to FTC cases as guidance for "what constitutes unfair methods of competition under Chapter 93A[.]" *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021). Subsections 2(b) and 2(c) note that "in construing *paragraph (a) of this section*…, the courts will be guided by the interpretations given by the [FTC]" and the "attorney general may … interpret[] the provisions of *subsection 2(a)* of this chapter." (Emphasis added.) Section 9 provides relief under Chapter 93A—not section 2; and the attorney general operates under section 4. Mass. Gen. Laws §§ 4, 9. The same is true as to the FTC Act, which Plaintiff's cases corroborate. FTC and attorney general actions provide no guidance on damages in a Rule 23 action.

Enforcement actions do not furnish a court with a "damages" model because the government does not seek "damages" in enforcement; it seeks fines under its authority found in state law or the FTC Act, 15 U.S.C. §45(m)(1)(A-B).[7] None of these cases contemplate individual assessment of damages, as this case seeks, nor do they contemplate whether those damages can be assessed in one proceeding to a class of claimants.

Lastly, Plaintiff claims *Omori v. Brandeis Univ.*, 673 F. Supp. 3d 21 (D. Mass 2023), does not apply because that case involved a breach-of-contract, rather than a Chapter 93A claim. However, the monetary damages measurement from *Omori* is essentially the same as here.[8] *Omori* specifically addresses issues with calculating the value of college education in class certification because of the subjective and individualized damages questions involved.

---

[7] Although the FTC previously sought restitution under Section 53(a) of the Act, the Supreme Court held those attempts unconstitutional in *AMG Cap. Mgmt., LLC v. F.T.C.*, 141 S. Ct. 1341 (2021), due to FTC abuses of this process. All the authorities Plaintiff's Opposition cites predate the Supreme Court's striking of that authority. Opp. at 18, fn. 8.

[8] Massachusetts federal and state courts also have extended a parallel between breach of contract and Chapter 93A damages. S*ee KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2024 WL 1558177, at *21 (D. Mass 2024) (noting that compensatory damages for breach of contract claim also "constitute[d] [plaintiff's] 'actual damages' for purposes of [Chapter] 93A" claim); *Haddad v. Gonzalez*, 576 N.E.2d 658, 655-56 (Mass. 1991) (holding that actual damages for Chapter 93A claims "consist of all damages foreseeably flowing from an unfair or deceptive act or practice," including compensatory damages "recoverable at common law").

Plaintiff's argument in her Opposition for a "per se" theory of liability requires little comment. It simply rehashes the incorrect argument she made in her Reply below, and misinterprets the causal connection required by this Court and the Supreme Judicial Council. The district court gave no indication whether it accepted that theory, stating cryptically that "it's a simplistic theory, but it is a theory." Dkt. 98, at 11.

## IV. The District Court's Abuse of Discretion in Allowing Plaintiff's New Arguments and Evidence Through Reply Brief is Relevant and Properly Raised.

Plaintiff suggests that this Court should take no issue with the district court's acceptance of the new arguments and evidence in her Reply brief. The new arguments and evidence included an entirely new damages theory and testimony from a previously undisclosed purported expert witness. Maintaining Saba's objection to this prejudicial conduct is no "last-ditch effort," as Plaintiff claims. This is simply another instance demonstrating the district court's abuse of discretion in certifying the class. The district court accepted Plaintiff's new arguments and evidence without question, and over Saba's objection, despite her violation of the procedural and local rules. It was an abuse of discretion to do so without allowing Saba an opportunity to respond. Plaintiff fails to acknowledge that she disclosed her expert witness *for the first time* in her Reply; that alone was

9

sufficient ground for Saba to seek redress from the district court, which it denied in abuse of its discretion.

## **CONCLUSION**

The district court abused its discretion by certifying, without explanation or a rigorous analysis of the Rule 23 factors, a Chapter 93A worldwide class. That is precisely the sort of imbalance Rule 23(f) is designed to address via interlocutory appeal. Accordingly, Saba respectfully requests that this Court grant its Petition and vacate the district court's line order on class certification, and for such other and further relief as this Court deems just and appropriate.

Saba University School of Medicine and
R3 Education, Inc.,

*Daryl J. Lapp*
Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

Dated:  November 4, 2024

10

## <u>Certificate of Compliance</u>

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7), excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,316 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 4, 2024

/s/<i>Daryl J. Lapp</i> 
Daryl J. Lapp

}

**<u>Certificate of Service</u>**

I hereby certify that on this 4th day of November, 2024, a true and correct copy of the foregoing was filed electronically with the Clerk's Office of the United States Court of Appeals for the First Circuit and served on all parties, using the CM/ECF system.

/s/*Daryl J. Lapp*
Daryl J. Lapp

}
139515805

# ATTACHMENT

## DECLARATION OF TERRY MOYA

I, Terry Moya, declare as follows:

1.     I am the Chief Financial Officer of R3 Education, Inc. ("R3") and have held the same position at all times relevant to the issues in this case.

2.     R3 owns and provides support services to Saba University School of Medicine B.V. ("Saba").

3.     The information in this declaration is taken from my own personal knowledge and review of R3's business records.

4.     Saba annually submits certified public accountant audit reports by BKC, CPAs, PC to the United States Department of Education. These reports reflect Saba's annual net income under United States Generally Accepted Accounting Principles (GAAP).

5.     In the last few years, since 2020, Saba has been experiencing losses in income.

6.     In 2020, Saba suffered a net loss of $7,758,088. In 2021, Saba's net income was $2,909,737. In 2022, Saba again experienced a net loss of $2,645,699. Finally, in 2023, Saba's net loss was $1,879,169.

7.     R3 is a U.S. stand-alone entity that does not generate material revenue of its own. Rather, it provides support services to its subsidiary medical schools, like Saba, which in turn pay a modest management fee for such services.


Signed under the penalties of perjury this 4th of November, 2024.


*/s/ Terry Moya*
Terry Moya
Chief Financial Officer
R3 Education, Inc.

139548712v.3