No. 24-8030
_____

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT
_____

NATALIA ORTIZ,
on behalf of herself and all others similarly situated,

Plaintiff-Respondent,

v.

SABA UNIVERSITY SCHOOL OF MEDICINE and R3 EDUCATION, INC.,

Defendants-Petitioners.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(The Honorable William G. Young, Case No. 1:23-cv-12002-WGY)
_____

**Defendants-Petitioners' Motion to Dismiss Petition to Appeal Class Certification Pursuant to Federal Rule of Civil Procedure 23(f)**
_____

Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA 02199
(617) 239-0100
daryl.lapp@lockelord.com

Nathalie Vega (First Cir. Bar No. 1193821)
LOCKE LORD LLP
2800 Financial Plaza, Providence, RI 02903
(401) 276-6421
nathalie.vega@lockelord.com

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

*Counsel for Defendants-Petitioners*

140945817v.1

Pursuant to Federal Rule of Appellate Procedure 42, Defendants-Petitioners Saba University School of Medicine and R3 Education, Inc. ("Petitioners") hereby move to voluntarily dismiss Petitioners' Petition to Appeal Class Certification Pursuant to Federal Rule of Civil Procedure 23(f).

On October 15, 2024, Petitioners filed their 23(f) Petition seeking appellate review of the district court's docket entry order certifiyng Respondent's class.  On November 26, 2024, the district court issued a written Memorandum and Order decertifying the class.  *See* Attachment.  As a result, the 23(f) Petition has now become moot.  Petitioners reached out to Respondent's counsel regarding this motion and there has been no response as of this filing.  This dismissal will not prevent any other party from seeking the relief to which it would otherwise be entitled.

Therefore, Petitioners respectfully request that this Court dismiss the above 23(f) Petition.

November 27, 2024

Saba University School of Medicine and
R3 Education, Inc.,

*Daryl J. Lapp*
Daryl J. Lapp (First Cir. Bar No. 31763)
LOCKE LORD LLP
111 Huntington Avenue, Boston, MA  02199
(617) 239-0100
daryl.lapp@lockelord.com

2

Michael McMorrow (First Cir. Bar No. 1214113)
LOCKE LORD LLP
111 S. Wacker Drive, Chicago, IL 60606
(312) 443-0246
michael.mcmorrow@lockelord.com

Nathalie Vega (First Cir. Bar No. 1193821)
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 276-6421
nathalie.vega@lockelord.com

*Counsel for Defendants-Petitioners*

## Certificate of Service

I hereby certify that on this 27th day of November 2024, a true and correct copy of the foregoing was filed electronically with the Clerk's Office of the United States Court of Appeals for the First Circuit and served on all parties, using the CM/ECF system.

/s/*Daryl J. Lapp*

Daryl J. Lapp

140945817v.1

# ATTACHMENT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
NATALIA ORTIZ, on behalf of     )
herself and a class of similarly)
situated persons,               )
                                )
              Plaintiff,         )
                                )
         v.                      )        CIVIL ACTION
                                )        No. 23-12002-WGY
SABA UNIVERSITY SCHOOL OF MEDICINE,)
R3 EDUCATION, INC.,             )
                                )
              Defendants.        )
                                )
```

YOUNG, D.J.                                    November 26, 2024

**MEMORANDUM AND ORDER**

## I.  INTRODUCTION AND RELEVANT PROCEEDINGS

This decision illustrates the power of oral argument.  The present complaint seeks class treatment for a claim of false advertising, a type of claim that calls out for class treatment. See Jordan Elias, The Multistate Problem in Consumer Class Actions and Three Solutions, 17 Harv. L. & Pol'y Rev. 301 (2022).  On September 17, 2024, the Court held a full hearing addressing the issue of class certification. See Tr. Mot. Certify Class, ECF No. 98.  In both her brief and at oral argument, the plaintiff's counsel made a compelling argument

1

supporting class certification as to liability.[1]  <u>Id.</u>; Pl.'s Mem.

Supp. Mot. Class Cert. ("Pl.'s Mem."), ECF No. 51.  Undaunted,

───────────────

[1] Natalia Ortiz, a former student of Saba University School of Medicine, on behalf of herself and all those similarly situated (collectively, "Ortiz") moved for class certification under Federal Rule of Civil Procedure 23(b)(3).
     On June 29, 2019, Ortiz sent a "Letter of Intent to Enroll" to R3 Education, Inc. seeking to enroll in Saba University School of Medicine ("Saba").  Mem. Supp. Defs.' Mot. Dismiss, Ex. A, Letter of Intent to Enroll & Tuition Deposit Form, ECF No. 16-1.  Ortiz began classes in September of 2019.  Compl. ¶ 77, ECF No. 1.
     Saba is a for-profit medical school in the Dutch Caribbean, headquartered in Massachusetts, that caters mainly to students with comparatively low GPAs and MCAT scores.  <u>Id.</u> ¶¶ 1-2, 19, 22.  Generally, the first USMLE exam, USMLE Step 1, is taken after students complete their basic science courses in their first two years or five semesters of medical school, and the series of USMLE exams is required to be completed in order to obtain a medical license.  <u>Id.</u> ¶¶ 53-54.  The overall average passage rate for first-time USMLE Step 1 test takers from American and Canadian medical schools was 97% in 2019, 98% in 2020, 96% in 2021, and 93% in 2022.  <u>Id.</u> ¶ 56.
     Ortiz alleges that Saba consistently advertised, since at least June 2015, that its students' passage rate for the USMLE Step 1 was 95-100%, and that Saba's Director of Admissions stated via e-mail to Ortiz that "virtually every Saba student passes the USMLE on their first attempt."  <u>Id.</u> ¶¶ 57, 60, 69-70, 74.  Ortiz alleges that this high passage rate was represented as indicative of the quality of Saba's education, <u>id.</u> ¶ 63, and that it was due to these high passage rates that she applied to Saba, <u>id.</u> ¶ 76.
     Ortiz soon came to learn that in order for students at Saba to sit for the USMLE Step 1, they must first achieve a certain score on an internal Saba University pre-test.  <u>Id.</u> ¶ 87.  This was not something she was informed about prior to enrolling.  <u>Id.</u> ¶ 93.  On average, only 50% of students at Saba sit for the USMLE Step 1.  <u>Id.</u> ¶ 80.  In contrast, of students that matriculated at American medical schools in the period 2017-2019, 89.3% sat for the USMLE Step 1.  <u>Id.</u> ¶ 81.  Therefore, while an average of 85.6% of students at all American medical schools passed the USMLE on their first attempt, the vast majority of students sat for it.  <u>Id.</u>  In contrast, the near-100% pass rate that Saba advertised was based on the scores of

defense counsel focused on the difficulties in calculating
damages and the concomitant administrative problems in
administrating a worldwide class action.  Tr. Mot. Certify Class
8-13.

Sensitive to the need -- present in every case, see Manual
for Complex Litigation (Fourth) § 10.13 (2004); Robert H.
Klonoff, The Decline of Class Actions, 90 Wash. U. L. Rev. 729,
756 (2013) -- to move the case along, the Court ruled from the
bench and tentatively certified the following class:

> All individuals who enrolled at Saba from September
> 2017 to the date of the certification order in this
> matter who: 1) are no longer enrolled at Saba and 2)
> did not sit for the USMLE Step 1 exam.  Excluded from
> the Class are: [Students who transferred credit to
> another school, or failed to pass a majority of the
> classes that they took]; Defendants, any entity in
> which Defendants have a controlling interest, and
> Defendants['] officers, directors, legal
> representatives, successors, and assigns.

---

the around only 50% of its students who sat for the exam.  Id. ¶
80.
Ortiz claims that she would not have taken out hefty
student loans and matriculated at Saba if she had been aware
that only half of Saba's students sat for the USMLE Step 1.  Id.
¶ 84.  After completing her first five semesters at Saba, Ortiz
failed to pass the pre-test within three attempts and was
dismissed in accordance with Saba's policies.  Id. ¶¶ 95-96.
Ortiz brought this action on behalf of herself and others
similarly situated, seeking damages from Saba University and
other relief -- including an injunction against Saba's
continuing its deceptive advertisement -- based on the claim
that it misled her and other class members through its
advertisements about its near-100% USMLE Step 1 pass rates while
omitting that an average of only 50% of its students sit for
Step 1.  Id., Prayer for Relief.

[Proposed] Order Granting Pl.'s Mot. Class Cert., ECF No. 50-1;
<u>see</u> Tr. Mot. Certify Class 13.  It did so with the following
caveat:

> That's the ruling of the Court. Subject to the risk
> that when I . . . write my opinion, I . . . conclude,
> on further review, that it just won't work and I
> decertify the class. . . . Obviously we're not sitting
> still, it's a dynamic.  So if you have something to
> say, I'm writing the thing up, so feel free. . . . The
> rest of it you can put in writing.

Tr. Mot. Certify Class 14-16.

Saba, as is its right, promptly filed a petition seeking
interlocutory review with the First Circuit.  Fed. R. Civ. P.
23(f).  In the meantime, this Court was writing up its
certification decision -- and realized that decision was wrong.
Because jurisdiction as to the order of class certification
divests when the appeals court accepts the petition seeking
interlocutory review, <u>see</u> <u>In re Intuniv Antitrust Litig.</u>
<u>(Indirect Purchasers)</u>, No. 16-CV-12396, 2019 WL 5789837, at *2
(D. Mass. Nov. 6, 2019) (Burroughs, J.); <u>Schultz</u> v. <u>Emory Univ.</u>,
No. 23-12929, 2024 WL 4534428, at *3 (11th Cir. Oct. 21, 2024);
<u>Amaya</u> v. <u>DGS Constr., LLC</u>, No. TDC-16-3350, 2019 WL 1501584 (D.
Md. Jan. 28, 2019), and since the First Circuit has not yet
accepted jurisdiction over Saba's appeal, this Court has
jurisdiction to decertify the class pursuant to Federal Rule of
Civil Procedure 23(c)(1)(C), <u>see</u> <u>City of Los Angeles, Harbor</u>
<u>Div.</u> v. <u>Santa Monica Baykeeper</u>, 254 F.3d 882, 886 (9th Cir.

4

2001) ("A district court therefore retains jurisdiction over an interlocutory order -- and thus may reconsider, rescind, or modify such an order -- until a court of appeals grants a party permission to appeal."); see also In re Terrorist Attacks on Sept. 11, 2001, No. 03-MDL-1570(GBD)(SN), 2024 WL 809887, at *2 n.3 (S.D.N.Y. Feb. 27, 2024); see generally Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 294 (1st Cir. 2000). Therefore, this Court here issues its memorandum of decision decertifying the class.

## II.   ANALYSIS

### A.   Legal Standard

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

"To qualify for class certification under Rule 23, a plaintiff must demonstrate that: 1) there are so many class members that joinder of all members is impracticable; 2) common questions of law or fact exist among the class members; 3) the named plaintiff's claims or defenses are typical of those of the class; and 4) the named plaintiff will fairly and adequately represent the interests of the class." Wortman v. LogMeIn,

5

Inc., No. 18-11475-GAO, 2022 WL 3714620, at *1 (D. Mass. Aug. 29, 2022) (O'Toole, J.). These are also known as the Rule 23(a) requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a); Wal-Mart Stores, 564 U.S. at 349.

In addition affirmatively to establishing the Rule 23(a) requirements, the party seeking class certification must also establish one of the three grounds listed under Rule 23(b). See Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003). If challenged, the party seeking class certification must establish the facts underlying the Rule 23(a) and 23(b) requirements by a preponderance of the evidence. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 811 (7th Cir. 2012); In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015). "Once plaintiffs have made their initial showing, defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing." In re Nexium, 777 F.3d at 27.

In reviewing requests for class certification, the district court must conduct a "rigorous analysis" which will "entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, 564 U.S. at 351 (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)). A court must not, however, "turn the class-certification proceeding into an

6

unwieldy trial on the merits." <u>In re PolyMedica Corp. Sec.</u>
<u>Litig.</u>, 432 F.3d 1, 17 (1st Cir. 2005).

**A. Rule 23(a)**

**1. Numerosity**

For a class to be certified, it must be "so numerous that
joinder of all members is impracticable." Fed. R. Civ. P.
23(a)(1). Courts have routinely referred to this as the
"numerosity" requirement. <u>See, e.g.</u>, <u>Wal-Mart Stores</u>, 564 U.S.
at 349; <u>General Tel.</u>, 457 U.S. at 156. While there is no
minimum number of class members needed to satisfy this
requirement, as a general matter, courts have held that if the
moving party can establish that its class's potential members
exceed 40, the requirement has been met. <u>See, e.g.</u>, <u>Garcia-</u>
<u>Rubiera</u> v. <u>Calderon</u>, 570 F.3d 443, 460 (1st Cir. 2009) (quoting
<u>Stewart</u> v. <u>Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001)) ("No
minimum number of plaintiffs is required to maintain a suit as a
class action, but generally if the named plaintiff demonstrates
that the potential number of plaintiffs exceeds 40, the first
prong of Rule 23(a) has been met.").

With Ortiz's proposed class definition, and based on Saba's
records of former students, at least 500 former students are
implicated in the class, establishing the impracticability of
joinder. <u>See</u> Pl.'s Mem. 9; Decl. Siller Supp. Pl.'s Mot. Class
Cert., Ex. 40, ECF No. 53-40; <u>id.</u>, Ex. 41, ECF No. 53-41.

Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied.

### 2. Commonality

For a class to be certified, there must also be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts have called this the "commonality" requirement. See, e.g., Wal-Mart Stores, 564 U.S. at 349; General Tel., 457 U.S. at 156. A question is common if it is "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, 564 U.S. at 350; see also Parent/Professional Advocacy League v. City of Springfield, 934 F.3d 13, 28 (1st Cir. 2019). At its crux, commonality is typically about "'a particular and sufficiently well-defined set of allegedly illegal policies [or] practices' that work similar harm on the class plaintiffs." Parent/Professional Advocacy League, 934 F.3d 13, 28 (alteration in original) (quoting Parsons v. Ryan, 754 F.3d 657, 679 (9th Cir. 2014)).

To meet this commonality standard, a class need not establish that every question of law or fact is identical; rather, the existence of a single significant common issue of fact or law is sufficient. In re Pharmaceutical Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 78 (D. Mass. 2005)

8

(Saris, J.).  "The threshold of 'commonality' is not high."  Id.
(quoting Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th
Cir. 1986)).  "The existence of shared legal issues with
divergent factual predicates is sufficient, as is a common core
of salient facts coupled with disparate legal remedies within
the class."  Id. (quoting Hanlon v. Chrysler Corp., 150 F.3d
1011, 1019 (9th Cir. 1998)).

Ortiz has established a "common core of salient facts"
through identifying a significant, uniform representation made
by Saba University to all prospective students: the
institution's USMLE Step 1 pass rates.  See Compl. ¶¶ 58-66,
140.  Ortiz contends that this representation, made through
widely disseminated advertisements and standardized marketing
materials, was misleading.  See Pl.'s Mem. 10-11.  Consequently,
Ortiz has satisfied the commonality requirement under Rule
23(a)(2).

### 3. Typicality

For a class to be certified, "the claims or defenses of the
representative parties" must be "typical of the claims or
defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Courts refer
to this as the "typicality" requirement.  See Wal-Mart Stores,
564 U.S. at 349; General Tel., 457 U.S. at 156.  This standard
is met when the plaintiff's "injuries arise from the same events
or course of conduct as do the injuries of the class, and . . .

its claims are based on the same legal theory as those of the class." In re Boston Sci. Corp. Sec. Litig., 604 F. Supp. 2d 275, 282 (D. Mass. 2009) (Woodlock, J.). Moreover, typicality is not a highly demanding requirement, and is met when there is "congruence between particular claims of the named class representatives and the generalized claims that are common to the class." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D. Mass. 2003) (Gertner, J.); see also In re Suffolk Univ. Covid Refund Litig., No. 20-10985, 2022 WL 6819485, at *1 (D. Mass. Oct. 11, 2022). Saba's arguments against typicality repeat the same arguments it makes regarding commonality. See Defs.' Mem. Opp'n Class Cert. ("Defs.' Mem.") 13 n.15, ECF No. 69.

Ortiz's claims are based on the same factual and legal premises as those of the proposed class members: both she and the class were allegedly harmed by the same marketing misrepresentations by Saba, and both allege harm under the same consumer protection laws. See In re Boston Sci. Corp., 604 F. Supp. 2d at 282. Ortiz, therefore, can "fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." Swack v. Credit Suisse First Boston, 230 F.R.D. 250, 264 (D. Mass. 2005) (Woodlock, J.).

### 4. Adequacy

The final requirement for class certification under Rule 23(a) is that "the representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts commonly refer to this as the "adequacy of representation" requirement. See Wal-Mart Stores, 564 U.S. at 349; General Tel., 457 U.S. at 156.

To satisfy the adequacy requirement, the moving party must meet a two-step standard: "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Ortiz asserts that her claims, like those of the proposed class, are rooted in Saba University's representations regarding USMLE Step 1 pass rates. As alleged, Ortiz was induced to enroll by these same representations, which similarly impacted other class members. See Compl. ¶ 119-21. Therefore, her interests in addressing and redressing these alleged misrepresentations are aligned with those of the class. See In re Boston Sci. Corp., 604 F. Supp. 2d at 282.

Saba has not raised any specific challenges to the adequacy of Ortiz as class representative, nor has it contested the qualifications or experience of her counsel.  Accordingly, the Court finds that Ortiz has satisfied the adequacy requirement.

***

For the reasons examined above, the Court holds that Ortiz successfully establishes the four requirements for class certification under Rule 23(a).  The Court next turns to an analysis of the Rule 23(b) requirements.

### B. Rule 23(b)(3) -- Predominance

Under Rule 23(b)(3), plaintiffs must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) contains two prongs, that is, the "requirements of predominance and superiority."  In re Boston Sci. Corp., 604 F. Supp. 2d at 282.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623.  "[T]he need for some individualized determinations at the liability and damages stage does not defeat class certification. . . .  Rather, the question is whether there is 'reason to think that [individualized]

12

questions will <u>overwhelm</u> common ones and render class certification inappropriate[.]'" <u>In re Nexium</u>, 777 F.3d at 21 (quoting <u>Halliburton Co.</u> v. <u>Erica P. John Fund, Inc.</u>, 573 U.S. 258, 276 (2014)). The First Circuit has noted that, in conducting a predominance inquiry, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." <u>Waste Mgmt. Holdings, Inc.</u> v. <u>Mowbray</u>, 208 F.3d 288, 298 (1st Cir. 2000). "In order to obtain class certification, a plaintiff at all times bears the burden of demonstrating that the Rule 23 requirements have been satisfied." <u>Southern States Police Benev. Ass'n, Inc.</u> v. <u>First Choice Armor & Equip., Inc.</u>, 241 F.R.D. 85, 90 (D. Mass. 2007) (Gorton, J.) (citing <u>Smilow</u>, 323 F.3d at 38; <u>Swack</u>, 230 F.R.D. at 257).

### 1. Choice-of-Law

The presence of divergent state laws can "swamp any common issues and defeat predominance"; therefore, the Court must determine which states' laws govern the claims of the class members in order to conduct its predominance analysis. <u>In re Nexium (Esomeprazole) Antitrust Litig.</u>, 297 F.R.D. 168, 175 (D. Mass. 2013) (quoting <u>Mowbray</u> v. <u>Waste Mgmt. Holdings, Inc.</u>, 189 F.R.D. 194, 199 (D. Mass. 1999)), <u>aff'd</u>, 777 F.3d 9 (1st Cir. 2015). This requires an initial assessment of whether a genuine

13

conflict exists among the potentially applicable state laws that could defeat predominance. See, e.g., Powers v. Lycoming Engines, 328 F. App'x 121, 124 (3d Cir. 2009); Senne v. Kansas City Royals Baseball Corp., 934 F.3d 918, 928 (9th Cir. 2019); Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 140 (2d Cir. 2015); Hale v. Emerson Elec. Co., 942 F.3d 401, 404 (8th Cir. 2019); see also In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1017-18 (7th Cir. 2002).

Plaintiffs seeking class certification bear the burden of conducting a "rigorous analysis" of the relevant laws of the states at issue, particularly when the claims involve plaintiffs from multiple jurisdictions. In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig., 270 F.R.D. 45, 57 (D. Mass. 2010) (Woodlock, J.); see also Gariety v. Grant Thornton, LLP, 368 F.3d 356, 370 (4th Cir. 2004). Courts have repeatedly held that the predominance requirement cannot be met "when the various laws have not been identified and compared." Gariety, 368 F.3d at 370; see also Grandalski v. Quest Diagnostics Inc., 767 F.3d 175, 180 (3d Cir. 2014); Southern States, 241 F.R.D. at 90 (discussing plaintiffs' burden of demonstrating that variations in state law do not defeat predominance).

In opposing class certification, Saba highlights numerous material differences between the law of Massachusetts and other states' consumer protection laws. See Defs.' Mem. 5 & nn.7-10.

14

The state laws cited include some that require a showing of reliance on representations, and one state which only permits suit to be brought for affirmative misrepresentations.  Id. (citing Correa v. Pecos Valley Dev. Corp., 617 P.2d 767, 771 (Ariz. Ct. App. 1980) ("Injury occurs when the consumer relies on the misrepresentation . . . ."); Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 (Pa. 2001); Cruz v. Andrews Restoration, Inc., 364 S.W.3d 817, 823-24 (Tex. 2012); Adardour v. American Settlements Inc., 2009 WL 1971458, at *3 (E.D. Va. 2009); Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 245 (Wis. 2004) ("Silence -- an omission to speak -- is insufficient to support a claim under Wis. Stat. § 100.18(1).")).  This materially differs from a claim under the Massachusetts consumer protection statute, which only requires a showing that the alleged misrepresentation "'caused' an identifiable 'harm,'" and which permits claims based on omissions.  Shaulis v. Nordstrom, Inc., 865 F.3d 1, 6 (1st Cir. 2017) (quoting Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 50 (D. Mass. 2015) (Saylor, J.)).  The parties do not dispute that a material conflict exists between Massachusetts law and the laws of the class members' home states.  These discrepancies underscore the challenge plaintiffs face in proving that common questions of law predominate across a nationwide class.

15

Despite these challenges, Ortiz attempts to circumvent the need for a detailed comparison of state laws by asserting that Massachusetts law should apply uniformly to the entire proposed class.  See Pl.'s Mem. 15.  Her argument hinges on the premise that in conducting a "functional" choice-of-law analysis, this Court will find that Massachusetts has the most significant relationship to the plaintiffs' claims, and that Massachusetts has a strong interest in regulating business conduct within its borders.

Nevertheless, after finding "at least one potentially relevant difference among the state laws," this Court is guided to undertake a choice-of-law analysis.  DaSilva v. Border Transfer of MA, Inc., 296 F.Supp.3d 389, 399 (D. Mass. 2017) (Saris, J.).  Since subject matter jurisdiction is grounded in diversity, the Court applies the choice-of-law rules of the forum state -- here, Massachusetts.  Viscito v. National Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Massachusetts applies a "functional approach to choice of law." Dahua Tech. USA Inc. v. Feng Zhang, 988 F.3d 531, 538 (1st Cir. 2021) (citing Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 645 (1994)).  To conduct this analysis, courts are "explicitly guided" by the Restatement (Second) of Conflict of Laws ("Restatement").  Viscito, 34 F.4th at 83 (quoting UBS Fin.

16

Servs., Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019)).
"Although Section 9 of the Massachusetts Consumer Protection Act
has no textual constraints on its application, Massachusetts
choice-of-law principles are not so unlimited." Camey v. Force
Factor, LLC, No. 14-14717-RWZ, 2016 WL 10998440, at *3 (D. Mass.
May 16, 2016) (Zobel, J.).  Guided by the Restatement, in a
consumer fraud case courts look to which state has the "most
significant relationship" to the claim and to the parties.  In
re Pharmaceutical, 230 F.R.D. at 82 n. 21.

      In determining which state has the most significant
relationship to a nationwide consumer fraud claim, the Court is
guided by the factors set forth in Section 148(2) of the
Restatement.  Id. at 82-83; Conway v. Planet Fitness Holdings,
LLC, 101 Mass. App. Ct. 89, 97-99 (2022); Camey, 2016 WL
10998440, at *3; Downing v. Keurig Green Mountain, Inc., No. 20-
CV-11673, 2021 WL 2403811, at *7-8 (D. Mass. June 11, 2021)
(Talwani, J.).  Section 148(2) lists six contacts to be
considered:

> (a) the place, or places, where the plaintiff acted in
> reliance upon the defendant's representations; (b) the
> place where the plaintiff received the
> representations; (c) the place where the defendant
> made the representations; (d) the domicil, residence,
> nationality, place of incorporation and place of
> business of the parties; (e) the place where a
> tangible thing which is the subject of the transaction
> between the parties was situated at the time, and (f)
> the place where the plaintiff is to render performance

17

under a contract which he has been induced to enter by
the false representations of the defendant.

Restatement § 148(2) (1971).  These choice-influencing factors
are to be considered in light of the overarching principles set
forth by Section 6 of the Restatement.  Restatement § 148 cmt.
e.[2]

The parties disagree on the application of Restatement §
148, with Ortiz stating that Section 148 has "no applicability
in the Chapter 93A context because 'reliance' is not a component
of a Chapter 93A claim."  Pl.'s Reply Supp. Class Cert. ("Pl.'s
Reply") 8 n. 22, ECF No. 82.  Nevertheless, this preemptively
assumes the application of Massachusetts law.  When conducting a
choice-of-law analysis, the Court is explicitly guided by the
Restatement's sections 148 and 6, which require a neutral
analysis of the implicated states' laws.

---

[2] Section 148's "Comment on Subsection 2" provides that the
"relative importance" of the factors "in a given case should be
determined in light of the choice-of-law principles stated in §
6."  Restatement § 148 cmt. e.  Section 6 lists seven principles
for a court to consider: (1) the needs of the interstate and
international systems, (2) the relevant policies of the forum,
(3) the relevant policies of other interested states and the
relative interests of those states in the determination of the
particular issue, (4) the protection of justified expectations,
(5) the basic policies underlying the particular field of law,
(6) certainty, predictability and uniformity of result, and (7)
ease in the determination and application of the law to be
applied.  Restatement § 6(2).  Comment c to Section 6, however,
makes clear that this list is not to be considered exclusive,
and that courts will "[u]ndoubtedly" give consideration to
factors not listed.  Restatement § 6 cmt. c.

Here, the alleged misrepresentations were created and
disseminated from Massachusetts, and the class members received
and acted in reliance on Saba's alleged misrepresentations in
their home states.[3]  Ortiz has not specifically identified the
states where class members are domiciled, but it is undisputed
that potential plaintiffs are disbursed worldwide.[4]  As explained
in the commentary to Restatement § 148, while the place where
the defendant made the representations is "approximately as
important" as the place where the plaintiff received the
representations, the place where the plaintiff relied on a
defendant's alleged misrepresentation is "more important."
Restatement § 148 cmt. g.[5]  Furthermore, when a plaintiff
received and relied on representations in a single state, that

---

[3] While reliance is not a per se requirement for a claim
under Chapter 93A, the language of Chapter 93A refers to
reliance.  See Mass. Gen. Laws ch. 93A, § 9 (requiring a demand
for relief "reasonably describing the unfair or deceptive act or
practice relied upon and the injury suffered").  For the purpose
of conducting a functional choice-of-law analysis as directed by
the Massachusetts Supreme Judicial Court, the location that
formed the basis for the plaintiffs' causal relationship to the
alleged misrepresentations will be construed as the place of
reliance.

[4] Defs.' Mem. 2 (explaining that former students implicated
in the class come from "40 states, the District of Columbia,
Puerto Rico, and at least 13 foreign nations.")

[5] "[T]he place where a plaintiff acted in reliance on
defendant's representations is more important than the place
where the defendant made or the plaintiff received the
representations."  Restatement § 148 cmt. g.

state's laws will generally apply. Restatement § 148 cmt. j.[6]
Factor five is not applicable here, and factor six points to
Massachusetts, but this contact is not as relevant as where the
plaintiff relied on the representations. See id. Accordingly,
as the plaintiffs received and relied on the alleged
misrepresentations in their home states, the guiding factors of
Section 148(2) point to the application of the laws of the
plaintiffs' home states.

Furthermore, this court is guided to analyze these factors
in light of Restatement § 6. Recognizing the risk of
conflicting with other states' policies, courts in this district
have followed an "unbroken string of opinions" declining to
extend Chapter 93A to multi-state classes. Camey, 2016 WL
10998440, at *2-3; see, e.g., In re Pharmaceutical, 230 F.R.D.
at 83; Downing, 2021 WL 2403811, at *8; Faherty v. CVS Pharmacy,
Inc., No. 09-CV-12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9,
2011) (Stearns, J.); Southern States, 241 F.R.D. at 93; Feingold
v. John Hancock Life Ins. Co. (USA), No. 13-CV-10185, 2013 WL
4495126, at *3 (D. Mass. Aug. 19, 2013) (Tauro, J.), aff'd, 753

---

[6] When a "plaintiff acted in reliance upon the defendant's
representations in a single state, this state will usually be
the state of the applicable law, with respect to most issues, if
(a) the defendant's representations were received by the
plaintiff in this state, or (b) this state is the state of the
plaintiff's domicile or principal place of business."
Restatement § 148 cmt. j.

F.3d 55 (1st Cir. 2014). This is in part because each state involved has an interest in applying its own consumer protection laws to transactions within its borders. Restatement 148 cmt. i.[7]

Applying Massachusetts law across all states in this action could undermine these local interests by limiting each state's ability to enforce its standards. Thus, to avoid imposing inconsistent liability standards across jurisdictions, the Court cannot disregard each state's regulatory framework for consumer protection. In re Pharmaceutical, 230 F.R.D. at 83 (collecting cases rejecting application of the law of a defendant's principal place of business to a nationwide class). Although applying Massachusetts law to a Massachusetts defendant would significantly simplify the choice-of-law determination, a "tempting" proposition, it is well established that "under the Restatement, the laws of the home states of the consumers govern." Id.

---

[7] "The plaintiff's domicil or residence, if he is a natural person, or the principal place of business, if plaintiff is a corporation, are contacts of substantial significance when the loss is pecuniary in its nature, as is true of the situations covered by the rule of this Section. This is so because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." Restatement § 148 cmt. i.

Although courts in this district have permitted nationwide class certification under Chapter 93A in the Bezdek and In re M3 cases, these cases involved **settlement** classes. Bezdek v. Vibram USA, 79 F. Supp. 3d 324 (D. Mass. 2015) (Woodlock, J.), aff'd, 809 F.3d 78 (1st Cir. 2015); In re M3 Power Razor, 270 F.R.D. Moreover, while the courts in Bezdek and In re M3 took a "common sense approach" to certifying the settlement class, the courts still carefully evaluated the applicable consumer protection laws as analyzed by the parties, and found that the variations in state law relating to the plaintiffs' claims did not "overcome the common factual and legal issues shared by the potential class members." In re M3 Power Razor, 270 F.R.D. at 61, 64. The court in In re M3 noted that courts must conduct a "rigorous analysis" of the varying state laws before certifying a class. Id. at 57.

Here, Ortiz has not conducted any analysis of state law variation, and therefore fails to meet her burden of demonstrating that the variations in state laws do not overcome common legal issues. See Southern States, 241 F.R.D. at 90. Consequently, the predominance of individual state laws poses significant barriers to a uniform application of Chapter 93A. In re M3 Power Razor, 270 F.R.D. at 57 (collecting cases explaining that "a rigorous analysis of state law variation must precede class certification.").

22

Ultimately, Massachusetts choice-of-law principles consistently favor applying the consumer's home state laws to consumer fraud claims. Applying Chapter 93A broadly to a nationwide class would undermine these principles and impair the regulatory authority of states outside Massachusetts. Accordingly, in conducting a comprehensive, functional choice-of-law analysis, the Court holds that the plaintiff has failed to meet her burden of demonstrating that Massachusetts law applies to the plaintiffs' claims.

## A. Damages

Saba argues that Ortiz's "damages theory is unworkable on a class basis" because Ortiz has failed "to demonstrate: (1) any cognizable theory to calculate damages on a class basis; (2) that she or any class member has standing in this case; or (3) that any injury was caused by the USMLE Step 1 first-time pass rates advertisements." Defs.' Mem. 6-7. Ortiz has requested that damages be calculated as the "tuition, fees, and costs of attending Saba" that class members paid. Pl.'s Reply 9.

While Ortiz has argued for a full refund of tuition and fees as damages, claiming that the entire educational experience was premised on the promise of a high likelihood of licensure, the Court finds that a full refund model would not be the most accurate measure of damages. Under Massachusetts law, Chapter 93A aims to make plaintiffs whole by compensating for the actual

23

harm caused by the defendant's conduct, not to punish or to provide a windfall. See Hershenow v. Enterprise Rent-A-Car Co. of Bos., 445 Mass. 790, 802 (2006) ("A consumer is not, however, entitled to redress under G.L. c. 93A, where no loss has occurred.").

Additionally, the Court is mindful of precedents that have assessed damages in similar contexts. For example, in the cases Spangler and Makaeff, the court determined that damages models seeking the full amount paid without accounting for residual value would effectively overcompensate the class, ignoring any benefit that students may have derived from the education they received, and ignoring potential affirmative defenses the defendants could raise as to individual plaintiffs. See Spangler v. National Coll. of Tech. Instruction, No. 14-CV-3005, 2016 WL 11772282, at *9-10 (S.D. Cal. May 19, 2016); Makaeff v. Trump Univ., LLC, 309 F.R.D. 631, 634 (S.D. Cal. 2015). Applying this principle, although Ortiz alleges that the program's failure to deliver on licensure resulted in students' education being worthless, because Saba University still provided education which could have led to licensure, this may have conferred some value on its students. Therefore, the Court finds that the full refund model is inapposite to Ortiz's classwide claims.

24

### III. CONCLUSION

Because the laws of multiple jurisdictions apply to this putative worldwide class of consumers, the differences in state and national laws predominate over common issues, leaving the predominance requirement of 23(b)(3) unsatisfied.  As a result, certification of the nationwide class is precluded, and the class must be decertified.  But see Elias, supra, at 343 (decrying this result on this ground because it "not only causes injustice but also weakens deterrence of corporate misconduct").  The Court decertifies the class.  Ortiz's motion for class notice is denied as moot, and Saba's motion to stay proceedings pending the resolution of the appeal is likewise denied as moot.

"The point is simply that in a large class action such as
this, management for trial is a dynamic process, one which
requires constant reevaluation and adjustment."  In re Nexium
(Esomeprazole), 297 F.R.D. at 183 (footnote omitted).


**So ordered,**


                                    WILLIAM G. YOUNG
                                        JUDGE
                                        of the
                                    UNITED STATES[8]

---

[8] This is how my predecessor, Peleg Sprague (D. Mass. 1841–
1865), would sign official documents.  Now that I'm a Senior
District Judge I adopt this format in honor of all the judicial
colleagues, state and federal, with whom I have had the
privilege to serve over the past 46 years.